No. 24-3876

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

DANIEL GRAND,

Plaintiff-Appellant

v.

CITY OF UNIVERSITY HEIGHTS, OHIO, et al.,

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF
APPELLANT DANIEL GRAND AND URGING REVERSAL

CHAD MIZELLE
  Acting Associate Attorney
  General

JASON MANION
  Counselor to the Associate
  Attorney General

MAC WARNER
  Deputy Assistant Attorney General

MICHAEL E. GATES
  Deputy Assistant Attorney General

ELIZABETH PARR HECKER
BARBARA A. SCHWABAUER
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 305-3034

**TABLE OF CONTENTS**

**PAGE**

INTEREST OF THE UNITED STATES ...................................................1

STATEMENT OF THE ISSUE.................................................................2

STATEMENT OF THE CASE ..................................................................3

      A.     Statutory Background.............................................................3

      B.     Factual and Procedural Background ......................................5

SUMMARY OF ARGUMENT ...............................................................12

ARGUMENT

      The district court erred by categorically applying a finality
      requirement to dismiss Grand's RLUIPA claims as unripe..........13

      A.     The finality requirement applies in land-use disputes
            only when the legal claim depends on the ultimate
            application of zoning laws to a particular property. ............14

      B.     The finality requirement does not apply categorically
            to all RLUIPA claims. ..........................................................16

      C.     The district court's dismissal of Grand's RLUIPA
            claims should be reversed, and his claims remanded
            for a proper analysis of ripeness.........................................21

CONCLUSION .......................................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**TABLE OF CONTENTS (continued):**

ADDENDUM DESIGNATING DISTRICT COURT DOCUMENTS

**TABLE OF AUTHORITIES**

| CASES: | PAGE |
|---|---|

*Alive Church of the Nazarene, Inc. v. Prince William Cnty.*,
59 F.4th 92 (4th Cir. 2023)......................................................23-24

*Beacon Hill Farm Assocs. II Ltd. v. Loudon Cnty. Bd.*,
875 F.2d 1081 (4th Cir. 1989) .......................................................19

*Canaan Christian Church v. Montgomery Cnty.*,
29 F.4th 182 (4th Cir. 2022)..........................................................19

*Catholic Healthcare Int'l, Inc. v. Genoa Charter Twp.*,
82 F.4th 442 (6th Cir. 2023).....................................................22-23

*Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183 (2d Cir. 2014)...................................24

*Christian Fellowship Ctrs. of N.Y., Inc. v. Village of Canton*,
377 F. Supp. 3d 146 (N.D.N.Y. 2019).............................................19

*County Concrete Corp. v. Town of Roxbury*,
442 F.3d 159 (3d Cir. 2006)...........................................................19

*Hacienda Valley Mobile Estates v. City of Morgan Hill*,
353 F.3d 651 (9th Cir. 2003) ..........................................................18

*Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty.*,
915 F.3d 256 (4th Cir. 2019) ...........................................................2

*Livingston Christian Schs. v. Genoa Charter Twp.*,
858 F.3d 996 (6th Cir. 2017) ..........................................................22

*Lucas v. South Carolina Coastal Council*,
505 U.S. 1003 (1992) .....................................................................16

**CASES (continued):** **PAGE**

*Miles Christi Religious Ord. v. Township of Northville,*
    629 F.3d 533 (6th Cir. 2010) .......................................................16

*Nasiewrowski Bros. Inv. Co. v. City of Sterling Heights,*
    949 F.2d 890 (6th Cir. 1991) .......................................................14

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) .......................................................19

*Pakdel v. City of S.F.*, 594 U.S. 474 (2021) (per curiam).......................15

*Redemption Cmty. Church v. City of Laurel,*
    333 F. Supp. 3d 521 (D. Md. 2018)............................................19

*Roman Cath. Bishop of Springfield v. City of Springfield,*
    724 F.3d 78 (1st Cir. 2013)................................................... 15, 20

*Sisters of St. Francis Health Servs., Inc. v. Morgan Cnty.,*
    397 F. Supp. 2d 1032 (S.D. Ind. 2005) ...................................19-20

*Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725 (1997) .............. 15, 19

*Sunrise Detox V, LLC v. City of White Plains,*
    769 F.3d 118 (2d Cir. 2014).......................................................20

*Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach,*
    727 F.3d 1349 (11th Cir. 2013) ..............................................18-20

*Thai Meditation Ass'n of Ala., Inc. v. City of Mobile,*
    980 F.3d 821 (11th Cir. 2020) .......................................................2

*Tree of Life Christian Schs. v. City of Upper Arlington,*
    905 F.3d 357 (6th Cir. 2018) .......................................................23

*Village of Arlington Heights v. Metropolitan Heights Hous.*
    *Dev. Corp.*, 429 U.S. 252 (1977) ...............................................24

**CASES (continued):**                                          **PAGE**

*Vision Church v. Village of Long Grove,*
    468 F.3d 975 (7th Cir. 2006) ..........................................................25

*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*
    *of Johnson City,* 473 U.S. 172 (1985),*
    *overruled on other grounds by Knick v. Township of Scott,*
    588 U.S. 180 (2019) ........................................................ *passim*

**STATUTES:**

Religious Land Use and Institutionalized Persons Act
    42 U.S.C. 2000cc *et seq.* ....................................................................1
    42 U.S.C. 2000cc(a)(1) ........................................................ 4, 17, 22
    42 U.S.C. 2000cc(b)(1) ............................................................... 4, 17
    42 U.S.C. 2000cc(b)(2) .............................................................4-5, 17
    42 U.S.C. 2000cc(b)(3) ............................................................... 4, 17
    42 U.S.C. 2000cc(b)(3)(A) .................................................................5
    42 U.S.C. 2000cc(b)(3)(B) .................................................................5
    42 U.S.C. 2000cc-2(f) ....................................................................1-2
    42 U.S.C. 2000cc-3(g) .....................................................................21

**REGULATION:**

90 Fed. Reg. 8847 (Jan. 29, 2025) (Exec. Order No. 14,118) ....................2

**RULE:**

Fed. R. App. P. 29(a) ...........................................................................2

## INTEREST OF THE UNITED STATES

Plaintiff-appellant Daniel Grand, who is Orthodox Jewish, alleges that the City of University Heights violated the land-use protections in the Religious Land Use and Institutionalized Persons Act (RLUIPA or the Act), 42 U.S.C. 2000cc *et seq.*, by attempting to use zoning codes to prevent Grand from hosting small prayer gatherings in his home. Grand alleges that the City incorrectly told him that he needed a special permit to host a small, informal prayer group in his home, held a hearing on his application that departed from normal zoning board practices, and when he withdrew his special use permit application, embarked on a harassment campaign against him. RLUIPA's land-use provisions safeguard the religious freedom of persons, places of worship, religious schools, and other religious assemblies or institutions. The fundamental premise of these land-use protections is that religious individuals should have a place to gather for worship and to carry out other religious activities.

Among other issues, this appeal concerns how to assess whether RLUIPA land-use claims are ripe for adjudication. The Attorney General has statutory authority to enforce RLUIPA, 42 U.S.C. 2000cc-

2(f), and the United States therefore has a substantial interest in the resolution of that issue on appeal.  Additionally, the United States has an interest in this case based on the President's declared policy to combat anti-Semitism "vigorously, using all available and appropriate legal tools," including "employ[ing] appropriate civil-rights enforcement authorities."  Exec. Order No. 14,118, 90 Fed. Reg. 8847 (Jan. 29, 2025).[1]

The United States offers its views pursuant to Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUE

RLUIPA prohibits local governments from adopting and enforcing land-use regulations that discriminate against religious entities and individuals or unjustifiably burden religious exercise.  Plaintiff-appellant Daniel Grand brought four distinct RLUIPA claims arising

---

[1] The United States routinely files amicus briefs in RLUIPA land-use cases.  *See, e.g.*, U.S. Amicus Br., *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980 F.3d 821 (11th Cir. 2020) (No. 19-12418); U.S. Amicus Br., *Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256 (4th Cir. 2019) (No. 18-1450).  The United States has also before filed a statement of interest addressing ripeness issues under the Act.  *See* Statement of Interest, *Gethsemani Baptist Church v. City of San Luis*, No. 2:24cv00534 (D. Ariz. July 29, 2024).

out of his efforts to host a small weekly prayer gathering in his home. The district court categorically dismissed these RLUIPA claims as unripe based on its finding that the City had not issued a final determination regarding the application of the City's zoning laws to Grand's attempts to hold prayer gatherings in his home. The United States addresses the following question and takes no position on any other issues presented in this appeal:

Whether the district court erred by categorically applying the finality requirement articulated in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019), to dismiss all of Grand's RLUIPA claims without examining whether the specific claims he asserted depend on the application of zoning laws to a specific property.

## STATEMENT OF THE CASE

### A. Statutory Background

RLUIPA's land-use protections include four provisions that safeguard the right to use land for worship and religious exercise. The four provisions apply to a state or local government's enforcement of

land-use regulations and guard against (1) substantial burdens on religious exercise; (2) treatment on less than equal terms; (3) discrimination based on religion; and (4) the exclusion or substantial limitation of religious assemblies in a particular area.  42 U.S.C. 2000cc(a)(1) and (b)(1)-(3).

First, RLUIPA prohibits States and local governments from imposing or implementing land-use regulations "in a manner that imposes a *substantial burden* on the religious exercise of a person" unless the burden serves a compelling governmental interest and is the least restrictive means for serving that interest.  42 U.S.C. 2000cc(a)(1) (emphasis added).  For example, a city's denial of zoning approval for a house of worship may create a substantial burden on the religious practice of its congregation.

Second, RLUIPA prohibits a government from imposing or implementing land-use regulations in a manner that treats "religious assembl[ies] or institution[s] on less than *equal terms* with a nonreligious assembly or institution."  42 U.S.C. 2000cc(b)(1) (emphasis added).  Establishing an equal-terms violation requires showing that a

house of worship is treated worse than a similarly situated nonreligious institution, such as being subjected to more onerous zoning restrictions.

Third, RLUIPA prohibits a government from imposing or implementing land-use regulations that "discriminate[] against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. 2000cc(b)(2). A typical set of circumstances to which this prohibition would apply is when a local government adopts zoning ordinances targeting specific religious communities or treats applicants of one faith differently than another.

Finally, RLUIPA prohibits land-use regulations that "totally *exclude[]*" religious assemblies from, or "*unreasonably limit[]*" religious assemblies within, a particular jurisdiction. 42 U.S.C. 2000cc(b)(3)(A) and (B) (emphases added). For example, changes to a zoning code that significantly reduce the number of districts or sites available to a house of worship may violate RLUIPA's unreasonable limitation prohibition.

### B.    Factual and Procedural Background

1. This RLUIPA case arises from a zoning dispute between plaintiff-appellant Daniel Grand and the City of University Heights, Ohio. Mem. Op., R. 93, PageID# 2768. As an Orthodox Jew, Grand's

religious practice requires him to "daven" (or pray) three times daily with a group of ten men. *Ibid.* He must daven in either a synagogue or a "shul," which is a place where davening occurs but is not necessarily a synagogue. *Ibid.* Because Grand is permitted to walk, but not drive, on the Sabbath, and because the three davenings he attended per day were at local synagogues far from his home, he decided to host a group at his home for the three davenings required on the Sabbath. *Id.* at PageID# 2768-2769.

A neighbor complained to City Mayor Michael Brennan about Grand's intended use of his home, and Brennan, in turn, notified City Law Director Luke McConville. Mem. Op., R. 93, PageID# 2769-2770. Hours after Brennan and McConville spoke, McConville issued a cease-and-desist letter to Grand explaining that Grand's home was zoned for residential use and that the City's land-use regulations did not permit Grand to use his home to operate a house of worship including "a shul or synagogue." *Id.* at PageID# 2770 (quoting McConville email with cease-and-desist letter attached, R. 81-6, PageID# 1454-1455). Grand told Brennan he planned to host only a small informal prayer group, but Brennan thought Grand was dishonest about his intentions. *Ibid.*

As a result, Brennan told Grand he must pursue a special use permit. Mem. Op., R. 93, PageID# 2771.

In University Heights, houses of worship are not permitted as of right in the residential district in which Grand's home was located—*i.e.*, a U-1 district. Mem. Op., R. 93, PageID# 2771. However, a person may apply for a special use permit, which, if granted, allows certain special uses of properties in a U-1 district, including use as a house of worship or synagogue. *Ibid.* The City's Planning Commission issues these permits if the applicant can show by clear and convincing evidence that the proposed use will not negatively impact the surrounding properties based on several factors. *Id.* at PageID# 2771-2772.

Grand applied for a special use permit seeking to "utilize [his] current recreation room for periodic religious gatherings." Mem. Op., R. 93, PageID# 2772 (quoting Pl.'s Mot. for Partial Summ. J., R. 81, PageID# 1336; Grand's SUP Application, R. 81-8, PageID# 1459). The Planning Commission scheduled a meeting to discuss Grand's application. Mem. Op., R. 93, PageID# 2772. Before the meeting, Grand submitted a letter explaining his intent to "have an informal prayer group for services in his home on the Jewish Sabbath and High

Holidays." *Id.* at PageID# 2772-2773 (quoting Cease-and-Desist Letter, R. 81-16, PageID# 1530-1531). The Planning Commission conducted the three-hour meeting as a "quasi-judicial" hearing, which Grand alleges deviated from normal practice. Mem. Op., R. 93, PageID# 2773. The Planning Commission did not reach a determination; rather, it adjourned the meeting with a request that Grand provide more information and schematics in support of his application. *Ibid.* Shortly after the meeting, the Planning Commissioners exchanged emails suggesting some resistance to Grand's request and intimating that Grand was not transparent or forthcoming. *Id.* at PageID# 2773-2774. Other aspects of the email discussion, however, questioned whether Grand should have to obtain a special use permit for small social gatherings (of 10-15 people) in a private home. *Ibid.*

A second Planning Commission meeting was scheduled; Brennan represented it would be limited to the record from the previous meeting. Mem. Op., R. 93, PageID# 2774. Grand withdrew his application before the meeting, however, stating that he did not intend to operate a house of worship requiring a special use permit. *Id.* at PageID# 2775. While discussing Grand's withdrawal of his application at this second

meeting, Brennan encouraged community members who observed Grand using his residence as a house of worship, or people congregating there for religious reasons, to report such activity. *Id.* at PageID# 2776.

During the pendency of his application for a special use permit and shortly after its withdrawal, the conflict surrounding Grand's use of his home escalated. Mem. Op., R. 93, PageID# 2776. For instance, a neighbor set up "multiple cameras pointing directly at and into his home." *Ibid.* But the City refused to act when Grand filed police reports and subsequently required Grand to remove a landscaping sheet he used to block the cameras. *Ibid.* Grand also alleges that neighbors complained repeatedly to the City about cars parking at his residence, and that the City's police department advised patrol units to frequently drive by his home. *Id.* at PageID# 2776-2777.

2. Grand sued the City and several City officials in the United States District Court for the Northern District of Ohio. Mem. Op., R. 93, PageID# 2777. As relevant here, Grand asserted claims against defendants based on all four of RLUIPA's religious land-use protections. Grand challenged the zoning code because it "permits[,] as of right[,] . . . [b]uildings, structures[,] and grounds owned and operated by a board of

- 9 -

education, municipality[,] or by a library board," while a special use permit is required to operate houses of worship. Second Am. Compl., R. 67, PageID# 621. He thus alleged that the code, "on its face," treats houses of worship less favorably than other nonreligious buildings, and thereby, regulates religious groups on less than equal terms. *Id.* at PageID# 621-622, 635-636. He also advanced substantial burden and unreasonable limitation claims based on the same differential treatment. *Id.* at PageID# 618, 620, 635-636. Grand further asserted that defendants discriminated against him based on religion by using the zoning code to "wage[] a zealous campaign of capricious enforcement . . . specifically targeting Grand and several other Orthodox Jews." *Id.* at PageID# 576. Grand sought declaratory and injunctive relief, compensatory damages, and attorney's fees for the alleged RLUIPA violations. *Id.* at PageID# 639-640.

Defendants moved for summary judgment. Defs.' Summ. J. Mot., R. 79, PageID# 1023-1026. In their filings in connection with this motion, Grand stated that he sought to host only a small informal prayer group, and the City acknowledged that such gatherings are "not

subject to any of the City's ordinances or permitting requirements."
Mem. Op., R. 93, PageID# 2780.

The district court granted Defendants' Motion for Summary Judgment on each RLUIPA claim. *See* Mem. Op., R. 93, PageID# 2789, 2803. Although defendants had raised ripeness challenges only as to Grand's non-RLUIPA claims, the district court concluded that "the [ripeness] doctrine applies to all claims arising from a land-use dispute" and "goes to whether the Court has subject matter jurisdiction." *Id.* at PageID# 2782 n.4. Accordingly, the court sua sponte analyzed whether Grand's RLUIPA claims were ripe (*id.* at PageID# 2783). The court ruled that "[i]n the land-use context," the concreteness of the dispute "hinge[s] on whether there has been a final determination by the appropriate local or administrative body." *Ibid.* The court held that the City did not make a final determination with respect to Grand's property because Grand withdrew his special-use permit application in light of the parties' shared understanding that no such permit was necessary for Grand's stated purpose. *Id.* at PageID# 2789. As a result, the court dismissed Grand's RLUIPA claims for lack of subject-matter jurisdiction. *Ibid.*

- 11 -

Grand appealed the district court's decision.  Notice of Appeal, R. 97, PageID# 2843.

## SUMMARY OF ARGUMENT

The district court wrongly dismissed Grand's RLUIPA claims as categorically unripe.  The court believed that the finality requirement articulated in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019) (*Williamson County*), applies to all land-use claims.  But that finality requirement—which asks whether "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," *Williamson Cnty.*, 473 U.S. at 186—applies *only* to land-use disputes where the plaintiff's claim depends on the ultimate application of zoning laws to a particular property.  That requirement does not govern land-use disputes that turn on other conduct that inflicts injury.

Because not all RLUIPA claims turn on a regulation's application to a particular property, a court cannot automatically apply *Williamson County*'s finality requirement to all RLUIPA claims.  This Court should

thus reverse the district court's decision dismissing Grand's RLUIPA claims and remand the case to the district court for further proceedings to analyze the ripeness of each claim.

## ARGUMENT

**The district court erred by categorically applying a finality requirement to dismiss Grand's RLUIPA claims as unripe.**

The district court erred when it dismissed Grand's RLUIPA claims as unripe on the ground that the City never made a final determination applying its zoning code to Grand's request to host religious prayer gatherings in his home. Mem. Op., R. 93, PageID# 2788-2789. The court wrongly assumed that the finality requirement articulated in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019), applies to all RLUIPA claims. But that requirement applies only when the RLUIPA claim depends on the defendant's application of zoning laws to a specific property. RLUIPA, however, does not limit actionable claims to those where a defendant applies its zoning laws to the detriment of a property. The court should have instead engaged in a claim-by-claim inquiry to determine whether *Williamson County*'s finality requirement

- 13 -

applied and whether Grand's specific RLUIPA claims were ripe for

adjudication.

**A.    The finality requirement applies in land-use disputes only when the legal claim depends on the ultimate application of zoning laws to a particular property.**

In *Williamson County*, the Supreme Court addressed the ripeness

of a Fifth Amendment taking-without-just-compensation claim, which

focuses on the "*effect*" of government regulations on a particular

property.  473 U.S. at 186 (emphasis added).  The Court held that the

"effect"—in that case, the "diminution in property value"—could not "be

assessed with any degree of certainty until the municipality arrives at a

final decision as to how the property owner will be permitted to develop

his property."  *Nasiewrowski Bros. Inv. Co. v. City of Sterling Heights*,

949 F.2d 890, 894 (6th Cir. 1991); *see also Williamson Cnty.*, 473 U.S. at

191 (noting that a zoning regulation's "economic impact" on, or

interference with, a particular property "cannot be evaluated" without a

"final, definitive position" on the regulation's application to the

property).  For this reason, the Court held that a takings claim is "not

ripe until the government entity charged with implementing the

regulations has reached a final decision regarding the *application* of the

regulations to the *property at issue.*"  *Williamson Cnty.*, 474 U.S. at 186 (emphases added).  As the Supreme Court observed, use of this finality requirement to assess ripeness "is compelled by the very nature of the inquiry" in a takings case.  *Id.* at 190.

A plaintiff can satisfy *Williamson County*'s finality requirement with the "relatively modest" showing that "no question [remains] about how the regulations at issue apply to the particular land in question." *Pakdel v. City of San Francisco*, 594 U.S. 474, 478 (2021) (per curiam) (alterations and internal quotations marks omitted) (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)).  Having this type of final determination guarantees that the "elements of the case are [not] uncertain" and that any "delay" in adjudication will not result in an intervening administrative resolution to the dispute.  *Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013) (citation omitted) (*Roman Cath. Bishop*).  Accordingly, the finality requirement can ensure that certain land-use disputes—those involving the ultimate application of zoning laws to a particular property—are ripe for adjudication.  *See Suitum*, 520 U.S. at 733-734 (describing finality requirement as a "prudential hurdle[]" for establishing

ripeness); *Miles Christi Religious Ord. v. Township of Northville*, 629 F.3d 533, 541 (6th Cir. 2010) (concluding that the "finality rule . . . is a prudential requirement" that a court "need not follow when its application 'would not accord with sound process'" (alteration and internal quotation marks omitted) (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1012 (1992))).

### B. The finality requirement does not apply categorically to all RLUIPA claims.

*Williamson County*'s finality requirement applies to a RLUIPA claim only if that claim depends on the application of a land-use regulation to specific property. Because many RLUIPA claims do not turn on whether and how a regulation will apply to a specific property, a court cannot reflexively apply the finality requirement to all RLUIPA claims.

1. RLUIPA claims may arise from harms that occur before a governmental entity applies its zoning code to a particular property or from harms otherwise inflicted in an underlying land-use dispute within the statute's scope. This conclusion flows directly from the statutory text. RLUIPA's coverage extends beyond the ultimate "effect" of land-use regulations on specific property, which is the relevant focal

point for the finality requirement.  *Williamson Cnty.*, 473 U.S. at 186.

Each RLUIPA land-use prohibition explicitly reaches a state or local

government's "impos[ition]" of land-use regulations *and* their

"implement[ation]."  42 U.S.C. 2000cc(a)(1) and (b)(1)-(3).  RLUIPA's

"substantial burden" and "equal terms" prohibitions further cover the

"manner" in which the governmental entity imposes or implements

land-use regulations.  Thus, RLUIPA covers conduct extending beyond

final determinations, including any intervening measures taken to

achieve those final determinations.

In other words, RLUIPA claims may be predicated on conduct that

occurs *during* the administrative process before a final determination is

reached.  *See* 42 U.S.C. 2000cc(a)(1) and (b)(1)-(3).  Local

decisionmakers can discriminate based on religion or religious practice

well before (or even without) any final determination applying a zoning

ordinance to a specific property.  For example, Grand alleges that the

City discriminated against him based on his religion with "a zealous

campaign of capricious enforcement" of its ordinances, including by

deviating from normal practices during the planning commission

hearing on his application for a special use permit.  Second Am. Compl., R. 67, PageID# 576.

Applying the finality requirement to Grand's discrimination claim makes no sense.  Grand will not get any formal determination on his special use permit request as he subsequently withdrew his application.  More significantly, a final determination of how the zoning ordinance would have been applied to Grand's property would not change the ultimate harm that Grand alleged:  discrimination.  In such cases, the finality requirement cannot meaningfully determine whether a claim is ripe for adjudication.  And a court "staying [its] hand" to await a final determination in such circumstances would serve no purpose other than to "perpetuate the [injury]."  *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach*, 727 F.3d 1349, 1357 (11th Cir. 2013).

2.  *Williamson County*'s finality requirement is similarly inapplicable to RLUIPA cases involving a facial violation of the statute's land-use protections.  "[B]y its nature," a facial challenge "does not involve a decision applying the statute or regulation."  *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003).  For example, "[i]f a locality wrote a zoning law that explicitly gave

worse terms to religious assemblies than other assemblies—museums get sewers by the river, but churches don't—that would violate the Equal Terms provision *facially*." *Canaan Christian Church v. Montgomery Cnty.*, 29 F.4th 182, 200 (4th Cir. 2022) (Richardson, J., concurring) (emphasis added). For facial claims, the "mere enactment of a regulation" is the type of harm inflicted in violation of the statute. *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006).

Facial challenges thus ripen "the moment the challenged regulation or ordinance is passed." *Suitum*, 520 U.S. at 736 n.10. Consequently, courts have routinely concluded that the finality requirement "presents no barrier" to facial RLUIPA claims. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 287 (5th Cir. 2012); *Temple B'Nai Zion, Inc.*, 727 F.3d at 1359 n.6; *Christian Fellowship Ctrs. of N.Y., Inc. v. Village of Canton*, 377 F. Supp. 3d 146, 154-155 (N.D.N.Y. 2019); *Redemption Cmty. Church v. City of Laurel*, 333 F. Supp. 3d 521, 530 (D. Md. 2018) (citing *Beacon Hill Farm Assocs. II Ltd. v. Loudon Cnty. Bd.*, 875 F.2d 1081, 1084-1085 (4th Cir. 1989)); *Sisters*

*of St. Francis Health Servs., Inc. v. Morgan Cnty.*, 397 F. Supp. 2d 1032, 1047-1048 (S.D. Ind. 2005).

3.  Accordingly, courts must assess the ripeness of RLUIPA claims on an individual basis by looking to the "nature of the [statutory] inquiry" and whether that inquiry "compel[s]" a final decision about the application of a regulation to a specific property to fully adjudicate the claim. *Williamson Cnty.*, 473 U.S. at 190-191. The First and the Eleventh Circuits—the two courts of appeals that have decided whether the finality requirement applies to RLUIPA claims that do not involve a final application of zoning law to a particular property—have taken this claim-based approach. *See Temple B'Nai Zion, Inc.*, 727 F.3d at 1357; *Roman Cath. Bishop*, 724 F.3d at 91-92; *see also Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d Cir. 2014) (recognizing with respect to an ADA claim that "discrimination in the context of a land-use dispute is subject to the final-decision requirement unless" there is "some injury independent of the challenged land-use decision"). A claim-by-claim approach ensures the "broad protection of religious exercise, to the maximum extent permitted" by the statute "and the

Constitution," 42 U.S.C. 2000cc-3(g).  This Court should embrace that approach.

**C.**   **The district court's dismissal of Grand's RLUIPA claims should be reversed, and his claims remanded for a proper analysis of ripeness.**

Because the district court categorically applied the finality requirement to all of Grand's RLUIPA claims, this Court should reverse the district court's decision and remand for further proceedings to assess whether the finality requirement applies to each of Grand's claims.

On remand, the district court should begin by assessing each of Grand's RLUIPA claims individually to determine, first, whether they involve a facial RLUIPA challenge to a land-use regulation.  If the claim alleged is facial in nature, then the finality requirement does not apply. If the claim is not a facial challenge, the court then must determine whether it alleges an injury that depends on a final land-use decision. This inquiry requires consideration of both the theory of each individual claim (*i.e.*, the specific RLUIPA protection at issue) and the facts supporting the claim:

*Substantial burden.*  A substantial burden claim requires a plaintiff to identify an imposition on "religious exercise" of "some degree of severity" and "more than an inconvenience."  *Catholic Healthcare Int'l, Inc. v. Genoa Charter Township*, 82 F.4th 442, 449 (6th Cir. 2023) (*Catholic Healthcare*) (citation omitted).  A substantial burden is one that "places significant pressure on a . . . plaintiff to modify its behavior."  *Livingston Christian Schs. v. Genoa Charter Township*, 858 F.3d 996, 1004 (6th Cir. 2017).  One factor relevant to such pressure includes whether the plaintiff "will suffer substantial delay, uncertainty, and expense."  *Catholic Healthcare*, 82 F.4th at 449.

To assess ripeness of a substantial-burden claim, a district court should ask what aspect of the government's "impos[ition] or implement[ation]" of its land-use regulations caused the plaintiff's burden (*i.e.*, the significant delay, uncertainty, or expense).  42 U.S.C. 2000cc(a)(1).  A court should apply *Williamson County*'s finality requirement to such claims only if those burdens result from the challenged regulations' ultimate effect on a particular property rather than, for example, from the government's conduct in the administrative process leading up to enforcement (or, in this case, nonenforcement).

*See Catholic Healthcare*, 82 F.4th at 449 (finding two years of administrative process and considerable expense imposed a substantial burden).

*Equal terms.* A prima facie case establishing an equal terms claim "requires proof that (1) the plaintiff is a religious assembly or institution, (2) subject to a land use regulation," which is imposed or implemented in a way that "(3) treats the plaintiff on less than equal terms, compared with (4) a nonreligious assembly or institution." *Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 367 (6th Cir. 2018) (citation, internal quotation marks, and alterations omitted). These unequal terms may result from the application of a land-use regulation to a specific property, but also from the procedural and other enforcement mechanisms applied to religious and nonreligious entities.

*Nondiscrimination.* Nondiscrimination claims differ from substantial burden and equal terms protections because they "require[] evidence of discriminatory intent." *Alive Church of the Nazarene, Inc. v. Prince William Cnty.*, 59 F.4th 92, 104 (4th Cir. 2023). To establish a prima facie case for such claims, a plaintiff must demonstrate "facts sufficient to show that the challenged government decision was

motivated at least in part by discriminatory intent." *Ibid.* (internal

quotation marks and citation omitted).  In RLUIPA cases, plaintiffs can

accomplish this using the factors in *Village of Arlington Heights v.*

*Metropolitan Heights Housing Development Corp.*, 429 U.S. 252, 266

(1977), which assesses, among other things, "the series of events leading

up to a land use decision" and "the context in which the decision was

made." *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic*

*Dist. Comm'n*, 768 F.3d 183, 199 (2d Cir. 2014).  Thus, a RLUIPA

plaintiff can challenge any government decision within RLUIPA's scope,

including both the government's final determination of a land-use

regulation's applicability to a property *and* decisions taken under local

authority to implement or impose such regulation.  The district court

should therefore analyze the scope of the alleged discriminatory conduct

to determine whether the finality requirement applies.

*Exclusion/Unreasonable Limits.*  As with the other RLUIPA

claims, an exclusion or unreasonable limitation on religious entities

within a jurisdiction may arise from any source within the statute's

coverage.  For example, a government's "unbridled" or "standardless"

discretion to reject special use permits for religious entities may provide

the basis for such a claim, regardless of whether that discretion is ultimately applied to a specific property. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 990-991 (7th Cir. 2006).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's decision dismissing Grand's RLUIPA claims and remand to the district court for further proceedings.

Respectfully submitted,

CHAD MIZELLE
  Acting Associate Attorney
  General

JASON MANION
  Counselor to the Associate
  Attorney General

MAC WARNER
  Deputy Assistant Attorney General

MICHAEL E. GATES
  Deputy Assistant Attorneys General

s/ Barbara A. Schwabauer
ELIZABETH PARR HECKER
BARBARA A. SCHWABAUER
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 598-9427

Date:  March 31, 2025

<strong>CERTIFICATE OF COMPLIANCE</strong>

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 4570 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

<u>s/ Barbara A. Schwabauer</u>
BARBARA A. SCHWABAUER
Attorney

Date: March 31, 2025

## CERTIFICATE OF SERVICE

On March 31, 2025, I filed this brief with the Clerk of the Court for the Sixth Circuit Court of Appeals by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

s/ Barbara A. Schwabauer
BARBARA A. SCHWABAUER
  Attorney

**ADDENDUM**

# ADDENDUM DESIGNATING DISTRICT COURT DOCUMENTS

| Record Entry Number | Description | PageID# Range |
|---|---|---|
| R. 67 | Second Amended Complaint | 576, 618, 620-621, 635-636, 639-640 |
| R. 79 | Defendants' Motion for Summary Judgment | 1023-1026 |
| R. 81 | Plaintiff's Motion for Partial Summary Judgment | 1336 |
| R. 81-6 | McConville email with cease-and-desist letter attached | 1454-1455 |
| R. 81-8 | Grand's Special Use Permit Application (SUP) | 1459 |
| R. 81-16 | Cease and Desist Letter | 1530-1531 |
| R. 93 | District Court Opinion | 2768-2777, 2780, 2782-2783, 2788-2789 |
| R. 97 | Notice of Appeal | 2843 |