UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DANIEL GRAND | ) | CASE NO.:  24-3876 |
| | ) | |
| Plaintiff - Appellant, | ) | (On appeal from the United States |
| | ) | District Court, Northern District of |
| vs. | ) | Ohio, Eastern Division, Case No.: |
| | ) | 1:22-CV-01594) |
| CITY OF UNIVERSITY HEIGHTS, | ) | |
| OH; MICHAEL DYLAN BRENNAN, | ) | |
| Mayor, In his official and individual | ) | |
| capacity; LUKE MCCONVILLE, City | ) | |
| Law Director, In his individual | ) | |
| capacity; PAUL SIEMBORSKI, City | ) | |
| Planning Commission member, In his | ) | |
| individual capacity | ) | |
| | ) | |
| Defendants – Appellees. | ) | |

---

**BRIEF OF DEFENDANTS/APPELLEES
CITY OF UNIVERSITY HEIGHTS, MICHAEL DYLAN BRENNAN,
LUKE MCCONVILLE AND PAUL SIEMBORSKI**

---

EDEN QUAINTON
Quainton Law, PLLC
2 Park Avenue, 20th Floor
New York, NY  10016
(212) 419-0575
Eden.quainton@quaintonlaw.net

Counsel for Plaintiff/Appellant

FRANK H. SCIALDONE (0075179)
STEVEN K. KELLEY (0023747)
ZACHARY W. ANDERSON (0095921)
Mazanec, Raskin and Ryder Co., L.P.A.
100 Franklin's Row - 34305 Solon Road
Cleveland, OH  44139
(440) 248-7906; (44) 248-8861 – Fax
fscialdone@mrrlaw.com
skelley@mrrlaw.com
zanderson@mrrlaw.com

Counsel for Defendants/Appellees City
of University Heights, Michael Dylan
Brennan, Luke McConville and Paul
Siemborski

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| DANIEL GRAND | CASE NO.: 24-3876 |
| Plaintiff - Appellant, | (On appeal from the United States District Court, Northern District of Ohio, Eastern Division, Case No.: 1:22-CV-01594) |
| vs. | |
| CITY OF UNIVERSITY HEIGHTS, OH; MICHAEL DYLAN BRENNAN, Mayor, In his official and individual capacity; LUKE MCCONVILLE, City Law Director, In his individual capacity; PAUL SIEMBORSKI, City Planning Commission member, In his individual capacity | |
| Defendants - Appellees. | |

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Defendants/Appellees make the following disclosures:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:  **NO**

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:  **NO**

_/s/Frank H. Scialdone_                                    May 30, 2025
FRANK H. SCIALDONE  (0075179)           Date
STEVEN K. KELLEY (0023747)
ZACHARY W. ANDERSON (0095921)

## **TABLE OF CONTENTS**

I.  STATEMENT REGARDING ORAL ARGUMENT ....................................1

II. ISSUES PRESENTED FOR REVIEW ...........................................1

Did the district court properly dismiss counts one through three and five through twelve because they were not ripe?....................................1

Did the district court properly grant summary judgment in favor of the Defendants/Appellees on count four (Fourth Amendment claim) because Mr. Grand's wife provided consent for the house inspection?..........1

III. STATEMENT OF THE CASE .....................................................1

    A.  Nature of Case ......................................................1

    B.  Procedural History.................................................2

IV. STATEMENT OF THE FACTS .....................................................3

    A.  Relevant Background ................................................3

V.  SUMMARY OF THE ARGUMENT ....................................................9

VI. LAW AND ARGUMENT.........................................................11

    A.  The district court properly dismissed all claims against the Defendants/Appellees.........................................................11

        1.  The district court properly dismissed counts one through three and five through twelve because they were not ripe........11

            a.  The district court properly applied Sixth Circuit precedent that governs the case to conclude that Grand's claims were not ripe..........................................12

            b.  Grand's argument that he allegedly suffered "immediate harm" that "is immediately ripe" based on the CADO is incorrect. .............................................16

            c.  The district court properly rejected a facial argument because Grand did not develop a facial

challenge and because Grand himself acknowledged that the ordinance did not apply. ............26

2.    Despite his suggestion that ripeness cannot be raised sua sponte by the district court, Supreme Court and Sixth Circuit precedent is well established that courts must determine subject matter jurisdiction or ripeness even in the absence of a challenge from a party .....................................32

3.    The district court properly granted summary judgment in favor of the Defendants as to Grand's Fourth Amendment and FACE Act claims. ..............................................33

       a.    Fourth Amendment Claim. ...............................................33

       b.    FACE Act Claim. ..........................................................34

4.    The Amicus DOJ's argument is improper under the Party Presentation Rule and is otherwise incorrect. ...........................37

       a.    The Party Presentation Rule bars the DOJ's argument that was not raised by the parties in this appeal. ...................................................................37

       b.    The Sixth Circuit rejects the DOJ's argument applying the finality/ripeness requirement to all RLUIPA claims. ..........................................................39

5.    The district court did not abuse its discretion when it declined supplemental jurisdiction over Grand's state mandamus claim under the Ohio Public Records Act. ............43

6.    Grand has abandoned or waived his claims for abuse of process, malicious prosecution, conspiracy, intentional infliction of emotional distress, invasion of privacy, and common law right to worship. ................................................45

VII.   CONCLUSION ................................................................................46

CERTIFICATE OF COMPLIANCE ................................................................48

CERTIFICATE OF SERVICE ....................................................................49

ADDENDUM: DESIGNATION OF RELEVANT DISTRICT COURT
DOCUMENTS ............................................................................................50

# TABLE OF AUTHORITIES

**Cases**

*AM Rodriguez Assocs., Inc. v. City Council of Vill. of Douglas*,
  No. 1:08-CV-214, 2009 WL 4353684 (W.D. Mich. Nov. 30, 2009)..................21

*Am. Trim, L.L.C. v. Oracle Corp.*,
  383 F.3d 462 (6th Cir.2004) .................................................................................35

*Anglers of the Au Sable v. United States Forest Service*,
  565 F.Supp.2d 812 (E.D.Mich.2008) ..................................................................27

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) ............................................................................................32

*Bannum, Inc. v. City of Louisville*,
  958 F.2d 1354 (6th Cir. 1992).................................................................. 9, 13, 23

*Bigelow v. Mich. Dep't of Nat. Res.*,
  970 F.2d 154 (6th Cir. 1992).................................................................. 13, 20, 32

*BMG Monroe I, LLC v. Vill. of Monroe*,
  93 F.4th 595 (2d Cir. 2024)..................................................................................25

*Brock v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of
  Am.*, 889 F.2d 685 (6th Cir. 1989).......................................................................32

*Burke v. Barnes*,
  479 U.S. 361 (1987) .............................................................................................31

*Catholic Healthcare Int'l, Inc. v. Genoa Charter Twp.*,
  82 F.4th 442 (6th Cir. 2023)......................................................................... 12, 13

*Cellnet Commc'ns, Inc. v. FCC*,
  149 F.3d 429 (6th Cir. 1998)................................................................................38

*Charvat v. NMP, LLC*,
  656 F.3d 440 (6th Cir. 2011)................................................................................43

iv

*Christopher M. ex rel. Laveta McA. v. Corpus Christi Indep. Sch. Dist.*,
   933 F.2d 1285 (5th Cir. 1991) ...............................................................39

*Clark v. City of Dublin, OH.*,
   178 Fed.Appx. 522 (6th Cir.2006) .......................................................27

*Community Church v. Lenox Tp.*,
   544 F.3d 609 (6th Cir. 2008) ...............................................................40

*Daisy Invest. Corp. v. City of Seven Hills*,
   No. 22-cv-1276, 2024 WL 3759648 (N.D. Ohio Aug. 12, 2024)........15

*Dalombo Fontes v. Gonzales*,
   498 F.3d 1 (1st Cir. 2007) .....................................................................39

*Davis v. Colerain Twp., Ohio*,
   51 F.4th 164 (6th Cir. 2022)..................................................................32

*Davis v. United States*,
   328 U.S. 581 (1946) .............................................................................33

*Dubuc v. Twp. of Green Oak*,
   406 F. App'x 983 (6th Cir. 2011) .........................................................40

*Elvis Presley Enters., Inc. v. City of Memphis, Tennessee*,
   No. 2:18-CV-2718, 2020 WL 6163564 (W.D. Tenn. Oct. 21, 2020).................40

*Estate of Quirk v. Comm'r of Internal Revenue*,
   928 F.2d 751 (6th Cir. 1991) ...............................................................29

*Experimental Holdings, Inc. v. Farris*,
   503 F.3d 514 (6th Cir.2007)..................................................................45

*Gamel v. City of Cincinnati*,
   625 F.3d 949 (6th Cir.2010).................................................................44

*Grace Cmty. Church v. Lenox Twp.*,
   544 F.3d 609 (6th Cir. 2008)...................................... 9, 13, 14, 40, 42

*Green v. Ameritech Corp.*,
200 F.3d 967 (6th Cir. 2000) ...............................................................11

*Guarino v. Brookfield Tp. Trustees*,
980 F.2d 399 (6th Cir. 1992) ..............................................................27

*Harajli v. Huron Twp.*,
365 F.3d 501 (6th Cir. 2004) ..............................................................34

*In re Isaacs*,
895 F.3d 904 (6th Cir. 2018) .............................................. 10, 38, 39

*Insomnia, Inc. v. City of Memphis*,
278 F. App'x 609 (6th Cir. 2008) .......................................... 9, 13, 14

*International Brotherhood of Teamsters v. United States*,
431 U.S. 324 (1977) ............................................................................24

*Isaak v. Trumbull Sav. & Loan Co.*,
169 F.3d 390 (6th Cir. 1999) ..............................................................28

*J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*,
48 F.4th 721 (6th Cir. 2022) ...............................................................45

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
16 F.4th 47 (2nd Cir. 2021) ................................................................36

*Kentucky v. U.S. ex rel. Hagel*,
759 F.3d 588 (6th Cir. 2014) ..............................................................31

*McCausland v. Charter Twp. of Canton*,
No. 23-1479, 2024 WL 3045525 (6th Cir. June 18, 2024) ................13

*McPherson v. Kelsey*,
125 F.3d 989 (6th Cir. 1997) ..............................................................28

*Miles Christi Religious Ord. v. Twp. of Northville*,
629 F.3d 533 (6th Cir. 2010) ......................... 9, 11, 12, 13, 14, 18, 41

*Moon v. Harrison Piping Supply*,
    465 F.3d 719 (6th Cir.2006) ...............................................................45

*Murphy v. New Milford Zoning Comm'n*,
    402 F.3d 342 (2d Cir. 2005) ................................................. 13, 18, 40

*Nasiewrowski Bros. Inv. Co. v. City of Sterling Heights*,
    949 F.2d 890 (6th Cir. 1991) .......................................................... 21, 40

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ...........................................................................11

*Oliver v. Etna Twp.*,
    No. 22-cv-2029, 2024 WL 1804993 (S.D. Ohio Apr. 24, 2024) ................. 14, 30

*Pakdel v. City & Cnty. of San Fran.*,
    594 U.S. 474 (2021) ...................................................................... 12, 40

*Patton v. Fitzhugh*,
    131 F.4th 383 (6th Cir. 2025) .............................................................31

*Payne v. Bobbie Brooks, Inc.*,
    505 F.Supp. 707 (N.D. Ohio 1980) ................................................. 24, 25

*Rhodes v. McDannel*,
    945 F.2d 117 (6th Cir.1991) ................................................................34

*Roman Cath. Bishop of Springfield v. City of Springfield*,
    724 F.3d 78 (1st Cir. 2013) ............................................................ 39, 42

*Schneckloth v. Bustamonte*,
    412 U.S. 218 (1973) ...........................................................................33

*Sperle v. Mich. Dep't of Corr.*,
    297 F.3d 483 (6th Cir.2002) ................................................................11

*Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach*,
    727 F.3d at 1357 (11th Cir.) ........................................................... 38, 42

*Texas Gas Transmissions, LLC v. Butler County Bd. of Com'rs,*
    625 F.3d 973 (6th Cir. 2010) ...................................................................32

*United States v. Russell,*
    26 F.4th 371 (6th Cir. 2022) ....................................................................46

*United States v. Sineneng-Smith,*
    140 S.Ct. 1575 (2020) ...................................................................... 38, 39

*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City,*
    473 U.S. 172 (1985) .......................................................................... 12, 42

*Wilson v. Gordon,*
    822 F.3d 934 (6th Cir. 2016) ...................................................................31

*Yetto v. City of Jackson,*
    No. 17-cv-1205, 2019 WL 2715545 (W.D. Tenn. June 28, 2019) .............. 14, 30

## Statutes

18 U.S.C. § 248(a)(2)...............................................................................35
28 U.S.C. § 1367(c)(3)..............................................................................44
R.C. 2506.03 ..........................................................................................21

## Other Authorities

UHCO § 1250.02 ......................................................................................7
UHCO § 1256.01 ......................................................................................7
UHCO § 1274.01(d)...................................................................................7

## I.    STATEMENT REGARDING ORAL ARGUMENT

The law is well established that Plaintiff's claims were not ripe, which is the primary issue in this appeal. In the current posture, oral argument is not necessary. The district court's opinion is soundly reasoned under Sixth Circuit law and should be adopted by this Court. To the extent that this Court believes oral argument would be helpful, the University Heights Defendants/Appellees would participate.

## II.    ISSUES PRESENTED FOR REVIEW

**Did the district court properly dismiss counts one through three and five through twelve because they were not ripe?**

**Did the district court properly grant summary judgment in favor of the Defendants/Appellees on count four (Fourth Amendment claim) because Mr. Grand's wife provided consent for the house inspection?**

**Did the district court properly grant summary judgment in favor of Defendants/Appellees on count sixteen (FACE Act claim) because there was no use of force, threat of force, or physical obstruction of Plaintiff seeking to exercise his First Amendment right at a place of worship, and his home was not "primarily used for religious worship" under the Act?**

**Did the district court abuse its discretion when it declined supplemental jurisdiction over Grand's state mandamus claim under the Ohio Public Records Act?**

## III.    STATEMENT OF THE CASE

### A.    Nature of Case

This case arises from Plaintiff/Appellant Daniel Grand's publicized announcement that he intended to establish a shul or synagogue in his home, beginning in January 2021. After the City notified Plaintiff that conducting a house

1

of worship or shul would require a special use permit ("SUP"), Plaintiff applied for the SUP. A hearing was held on March 4, 2021, where Plaintiff's counsel presented Plaintiff's proposal for the SUP. A decision on the matter was tabled and a future hearing was scheduled to consider Plaintiff's SUP on March 23, 2021. On March 23, before the meeting, Plaintiff withdrew his application.

### B.    Procedural History

Plaintiff Grand filed a Complaint on September 8, 2022, naming as defendants the City of University Heights, Michael Dylan Brennan (hereinafter "Mayor Brennan"), and Jeffrey Porter. Subsequently, on May 9, 2023, Plaintiff filed his First Amended Complaint, adding Defendants Luke McConville (hereinafter "Law Director McConville"), Paul Siemborski and several others, while removing Jeffrey Porter. Then, after engaging in discovery and taking depositions, Plaintiff voluntarily dismissed all defendants except University Heights, Mayor Brennan, Law Director McConville and Paul Siemborski. Finally, on January 2, 2024, Plaintiff filed his Second Amended Complaint (hereinafter the "Complaint") for the sole purpose of asserting his Due Process claims under the Fourteenth rather than the Fifth Amendment. (R. 67, Second Am. Complaint; PageID#: 573.)

All Defendants moved for summary judgment on all counts. (R. 79, Mot. for S.J., PageID#: 1001.) Grand partially opposed Defendant's motion (R. 89, Brief. In Opp. To Mot. for S.J., PageID#: 2503), and Defendants replied (R. 90, Reply in

Support, PageID#: 2561).[1] The district court dismissed counts One through Three and Five through Twelve for lack of subject matter jurisdiction; and granted Defendants' summary judgment motion as to Counts Four, Thirteen, and Fifteen through Twenty under Rule 56 of the Federal Rules of Civil Procedure. (R. 95, Amended Memorandum Opinion and Order; PageID#: 2805.) The district court declined supplemental jurisdiction on Count Fourteen. (*Id.*)

The Plaintiff timely appealed to this Court. (R. 97, Notice of Appeal; PageID#: 2843.)

## IV.    STATEMENT OF THE FACTS

### A.    Relevant Background

Plaintiff moved to University Heights in 2017. (R. 79-1, Def.s' Mot. For Summ. J., Dep. of Grand, hereinafter "Plaintiff's Depo." at 29:7-9; PageID#: 1061.) Before moving to University Heights, Plaintiff lived in New York City where he bought and sold real estate and owned a property violation removal company called Violation Removed, Inc. for over a decade. (*Id.* at 9:6-21:13; PageID#: 1041.) In conducting his property violation removal business, Plaintiff was involved with multiple administrative departments and even attended administrative tribunal

---

[1] Plaintiff Daniel Grand moved for partial summary judgment on Counts One through Three, Five, Six, Eight through Twelve, and Fourteen, and only as asserted against University Heights and Mayor Michael Brennan, which the district court denied. (R. 95, Amended Memorandum Opinion and Order; PageID#: 2805.)

3

hearings on behalf of clients, representing their interests in these matters. (*Id.* at 21:24-29:6; PageID#: 1053.)

As an adherent to Orthodox Judaism, Plaintiff attends worship services three to four times daily. (*Id.* at 45:19-46:9; PageID#: 1062-1063.) Plaintiff does not restrict his religious practice to one synagogue. (*Id.* at 46:10-47:4; PageID#: 1063-1064.) Instead he is free to attend any synagogue or minyan (essentially a quorum for a prayer group) around him. *Id.* As described by Plaintiff: "I don't think you understand. When you want to pray, it's like a library. If there are 10 libraries and you want to go get a book, you don't necessarily have to go to that library that you always go to. If the other one's closer, you go to the closer library." (*Id.* at 46:23-47:4; PageID#: 1063-1064.)

Plaintiff first owned a home on Silsby Road in University Heights where he was very close to the synagogues he attended. (*Id.* at 56:6-8; PageID#: 1068.) He then relocated to 2343 Miramar Boulevard in 2019. (*Id.* at 8:14-9:5; 55:25-56:13; PageID#: 1040-1041; 1067-1068.) After his move to Miramar and throughout his time in University Heights, Plaintiff has been able to attend daily prayers in accordance with his beliefs. (*Id.* at 51:20-52:18; PageID#: 1065-1069.)

After moving to Miramar, Plaintiff decided that he wanted to establish a shul in his home so that he would have less of a distance to travel on the Sabbath. (*Id.* at 56:23-57:20; PageID#: 1068-1069.) Shortly after he was approached by an

individual suggesting that he hold services in his home, Plaintiff sent an email to a group inviting them to come to his Miramar address and attend a "shul" named the Shomayah Tefillah Beis Hakeneset and introducing "our Rabbi - Rabbi Rosskam." *Id.* at 84:16-87:5; PageID#: 1070-1071; R. 88-2; Shomayah Tefillah Invitation; PageID#: 2469). The email further states: "[a]nd [p]lease spread the word to whomever you feel might be interested in coming." *Id*.

Specifically, on January 19, 2021, Grand sent an email inviting approximately twelve neighbors—and any others those invitees wanted to bring—to join him for a minyan prayer session at his home. (R. 88-2; Shomayah Tefillah Invitation; PageID#: 2469.) The invitation read, in pertinent part:

> You are cordially invited to join us this Shabbos for the inauguration of the Shomayah Tefillah Beis Hakeneset located at 2343 Miramar Blvd. (The Daniel J. Grand Residence)
> We would also like to take this opportunity to introduce to you our Rabbi – Rabbi Rosskam - a smicha recipient from Rabbi Rueven Feinstein, and Rabbi Heinemann from Star-K
> The Davening Times will be:
> Friday Erev Shabbos Mincha 5:20 p.m. [Friday evening]
> Shabbos Shacharis followed by Kiddush 9:45 a.m. [Saturday morning]
> Mincha Followed by Seudah Shlishit 5:00 p.m. [Saturday evening]
> You will see the shul entrance - keep a look out for the Orange Windows - And Please spread the word to whomever you feel might be interested in coming – The shul is being put together for two reasons, one has always been to expand the
> community, so we can spread out and open up more houses on the other side of belvoir, and the other is to have a place where people come to really, seriously daven to Hashem - we want to have a place that doesn't have talking during the davening, a powerful place to have your prays heard and answered Bezrat Hashem.

(*Id.*)

Around that same time, the City heard about the planned shul from a resident and mailed Plaintiff a cease-and-desist letter to prevent any violation of the City's codified ordinances regarding operation of "a religious place of assembly and/or operation as a shul or synagogue . . ." in residential districts. Defendant Law Director McConville sent the cease-and-desist letter with the email subject line referred to "Use of Premises as a Shul," and the body of the cover email referred to "proposed use of said premises for religious assembly." The letter in relevant part stated:

> I am writing to you in my capacity as Law Director for the City of University Heights (the "City"). The City has been made aware that you intend to use the premises at 2343 Miramar Boulevard (the "Premises") as a place of religious assembly and in operation of a shul. Pursuant to the zoning map and codified ordinances of the City, the premises are zoned U-1 for residential use. The use or operation of the Premises as a religious place of assembly and/or in operation as a shul or synagogue is not permitted under the City's ordinances.
>
> The City hereby notifies you that the use of the Premises as a place of religious assembly and/or in operation of a shul or synagogue is prohibited. To the extent that the Premises are currently being used for said purposes or are intended to be used for such purposes in the immediate or near future, the City hereby demands that you immediately cease and desist any and all such operations. Violation of the City's ordinances in this manner may result in building code citations against you and in the pursuit of additional remedies.
>
> …
>
> Allow me to refer you to City Codified Ordinance Chapter 1274 entitled "Houses of Assembly and Social Service Uses." Under Chapter 1274, you may make application to the City's Planning Commission for a Special Use Permit.

(R. 81-6 at Page ID#: 1454–55.) In response to this letter, Plaintiff emailed Mayor Brennan providing information and requesting a SUP "to use the space as a place for people to come and pray with me in my home." *Id.* at 113:9-116:3, Page ID#: 1081-1084; January 22, 2021 SUP Application, attached as Ex. D, Page ID#: 1207.

As the neighbors surrounding Plaintiff's home became aware of the anticipated shul on their street, Plaintiff sent them a letter, claiming that he intended to operate an "informal" prayer group in his home and told his neighbors that "the city informed me that zoning ordinances allowed for a 'synagogue' or 'shul' (same word in Yiddish) with a "Special Use Permit." (Plaintiff's Depo, Exhibit A, at 97:3-1-101:12, Page ID#: 1074-1078; March 3, 2021 Letter to Neighbors, attached as Ex. E, Page ID#: 1210.)

Grand's residence is zoned U-1. (R. 79 at Page ID#: 1013.) According to the University Heights Code of Ordinances ("UHCO"), the only permitted uses in U-1 zones are one-family dwellings, buildings owned by a board of education, buildings owned by the municipality, and buildings owned by a library board. UHCO § 1250.02. Churches are not permitted as a matter of right in U-1 districts. UHCO § 1256.01.

UHCO 1274.01 (d) provides in pertinent part:

(d)   A Special Use Permit for any use described in this section shall be applied for and shall be issued on the recommendation of the Planning Commission, subject to any reasonable conditions the Planning Commission may impose uniformly in similar circumstances,

7

for any permitted location, after the applicant demonstrates to the Planning Commission by clear and convincing evidence that the provisions of this chapter will be met and that the special use will not impair surrounding property values or uses, vehicular parking and pedestrian or traffic conditions, lighting glare at night, noise pollution to others or other applicable criteria in the Planning and Zoning Code, and will not be otherwise contrary to the public health, safety and welfare.

(1)   The Planning Commission may hold public hearings on any such application to the extent it deems reasonable, but not more than ninety days after the filing of the application and after compliance with all submissions or revisions thereof required under Section 1274.04.

(2)   The recommendation of the Planning Commission shall be subject to the approval of a majority of Council. A denial by the Planning Commission may be appealed to Council by applicant's filing a written appeal within 15 days of such denial. The appeal shall be heard by Council within 45 days of the filing thereof.

In response to Plaintiff's request for a SUP, a hearing was scheduled for March 4, 2021 with the University Heights Planning Commission to consider Plaintiff's application. (R. 79-1, Def.s' Mot. For Summ. J., Dep. of Grand, hereinafter "Plaintiff's Depo." at 116:4-15, Page ID#: 1084.) Plaintiff attended that meeting with counsel and presented his application for a SUP to allow a shul within his home on Miramar Boulevard. (*Id.* at 123:25-132:17, Page ID#: 1087-1094.) The Planning Commission hearing was more than three hours long.  At the conclusion of the hearing the decision on the permit was tabled and the matter was reset to March 23, 2021. *Id.*; R. 79-6, Dep. of Paul Siemborski, attached as Ex. F at 60:1-20; 107:2-15, Page ID#: 1213; 1214; R. 79-7, Dep. of April Urban, attached as Ex. G, at 23:16-24:8, Page ID#: 1217-1218.

8

On March 23, 2021 before the second meeting, Grand withdrew his SUP application. His email read:

> Mayor Brennan and Planning Commission,
>     Please be advised that I'm withdrawing my application for a special use permit. **I do not wish to operate a house of worship as is defined under the zoning ordinance**, in the privacy of my home.

(R. 88-4 at PageID#: 2482, emphasis added.)

## V.    SUMMARY OF THE ARGUMENT

The district court properly held that the majority of Plaintiff's claims were not ripe. "Simply put, the factual record before the Court is that the ordinance did not apply, Grand withdrew his application, and the City did nothing further." (R. 95, Am. Memo. Op. and Order at 23; PageID#: 2827.)

The district court properly reasoned that absent a showing the City expressed a final or definitive position, the issues and claims Grand presented were not ripe and the court did not have subject matter jurisdiction. This is in accord with well-established Sixth Circuit precedent. *See e.g.s, Miles Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010); *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008); *Insomnia, Inc. v. City of Memphis*, 278 F. App'x 609 (6th Cir. 2008); *Bannum, Inc. v. City of Louisville*, 958 F.2d 1354, 1363-64 (6th Cir. 1992); etc.) Grand's arguments do not avoid this Circuit's established precedent. Grand argues that a facial challenge to an ordinance obviates the need for finality in the ripeness analysis. Not only did Grand fail to develop a facial argument (as the

9

district court held), but Grand agreed that the City's ordinance did not apply, rendering such claim moot. Grand's amicus party also attempts to raise arguments that Grand himself did not raise. Under the party presentation rule, the Sixth Circuit has held that when an amicus raises issues that exceed those presented by the parties, that the Court "may not consider such issues." *In re Isaacs*, 895 F.3d 904, 917 (6th Cir. 2018). Moreover, the Sixth Circuit applies the finality requirement of ripeness generally to RLUIPA claims in the Sixth Circuit. Grand's amicus party offers limited precedent outside of the Sixth Circuit that is not binding on this Court, and its reasoning is unpersuasive given the existence of contrary Sixth Circuit precedent.

The district court properly granted summary judgment in favor of the Defendants as to Grand's Fourth Amendment and FACE Act claims. First, Despite Grand's argument, all inspections of Grand's home were done with his wife's consent, rendering Grand's Fourth Amendment argument untenable. Second, the district court properly granted summary judgment in favor of Defendants/Appellees because there was no use of force, threat of force, or physical obstruction of Plaintiff seeking to exercise his First Amendment right at a place of worship. Additionally, his home was not "primarily used for religious worship" under the Act. The district court also did not abuse its discretion when it declined supplemental jurisdiction over Grand's state mandamus claim under the Ohio Public Records Act, which is reserved for Ohio courts, specifically the Supreme Court of Ohio, intermediate

appellate courts and common pleas courts, which all have original jurisdiction to hear such cases and grant such extraordinary relief.

For the reasons set forth in the district court's opinion and those further advanced in this Brief, this Court should affirm the district court.

## VI.   LAW AND ARGUMENT

### A.   The district court properly dismissed all claims against the Defendants/Appellees.

The standard of review for summary judgment is de novo. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir.2002). A federal appellate court applies a de novo standard when reviewing the district court's determination of jurisdiction or ripeness. See *Green v. Ameritech Corp.*, 200 F.3d 967, 972 (6th Cir. 2000).

### 1.   The district court properly dismissed counts one through three and five through twelve because they were not ripe.

The district court properly dismissed "Counts One through Three and Five through Twelve for lack of subject matter jurisdiction" because these claims were not ripe. (R. 95, Am. Memo. Op. and Order at 23; PageID#: 2827.)

Grand does not challenge the basic law of ripeness.

As the district court observed, the basic law is well-established. "The ripeness doctrine encompasses 'Article III limitations on judicial power' and 'prudential reasons' that lead federal courts to 'refuse to exercise jurisdiction' in certain cases." *Miles Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)).

Federal court jurisdiction is limited to justiciable cases and controversies, thereby eliminating from their judicial review abstract, unresolved, or premature matters. *Id*. In assessing ripeness, courts must resolve two questions: "(1) is the dispute 'fit' for a court decision in the sense that it arises in 'a concrete factual context' and involves 'a dispute that is likely to come to pass'? and (2) what are the risks to the claimant if the federal courts stay their hand?" *Miles Christ*i, 629 F.3d at 537).

> **a.    The district court properly applied Sixth Circuit precedent that governs the case to conclude that Grand's claims were not ripe.**

In the land-use context, the concepts of "a concrete factual context" and "a dispute that will likely come to pass" hinge on whether there has been a final determination by the appropriate local or administrative body. *Miles Christ*i, 629 F.3d at 537 (citing *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985)). Meaning, has the disputed issue been presented to local authorities and, if so, has the local or administrative body "adopted a 'definitive position' as to 'how the regulations at issue apply to the particular land in question.'" *Catholic Healthcare Int'l, Inc. v. Genoa Charter Twp*., 82 F.4th 442, 448 (6th Cir. 2023) (quoting *Pakdel v. City & Cnty. of San Fran*., 594 U.S. 474, 478-79 (2021)); see also *Bannum, Inc. v. City of Louisville*, 958 F.2d 1354, 1363-64 (6th

Cir. 1992) ("By finality we mean that the actions of the city were such that further administrative action by [the plaintiff] would not be productive.").[2]

In accord with Sixth Circuit law, the district court followed the established precedent in this Circuit that the finality requirement is applied to "constitutional and statutory challenges to local land-use requirements," including those at issue here. (R. 95, Am. Memo. Op. and Order at 17; PageID#: 2821, citing e.g.s, *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008) (RLUIPA claims); *Insomnia, Inc. v. City of Memphis*, 278 F. App'x 609, 616 (6th Cir. 2008) (First Amendment claim arising under the Free Speech Clause); *Bannum*, 958 F.2d at 1363–64 (Equal Protection Clause under Fourteenth Amendment); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 350 (2d Cir. 2005) (First Amendment claim arising under the Free Exercise Clause). Procedural due process claims are also subject to the finality requirement unless the "denial of procedural due process itself creates an injury." *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 160 (6th Cir. 1992).

---

[2] Final decisions in this context do not require exhaustion. *Miles Christi*, 629 F.3d at 541; *Catholic Healthcare*, 82 F.4th at 448. That is, plaintiffs do not need to prove that their land-use request was reviewed by every applicable authority at the local level. Nor does a plaintiff need to exhaust appeals. See also *McCausland v. Charter Twp. of Canton*, No. 23-1479, 2024 WL 3045525, at *6 n.6 (6th Cir. June 18, 2024) (explaining recent Supreme Court precedent does not require exhaustion but does still require finality).

13

The district court properly held that, "Absent a showing the City expressed a final or definitive position, this Court does not have subject matter jurisdiction." (R. 95, Am. Memo. Op. and Order at 17; PageID#: 2821, citing e.g.s, *Insomnia*, 278 F. App'x at 610 (affirming dismissal of constitutional claims on ripeness grounds where interim order instructed applicant to reapply under different code provisions); *Grace Cmty. Church*, 544 F.3d at 611 (affirming dismissal of RLUIPA and Equal Protection claims as unripe where planning commission's revocation of SUP to operate a church in a residential area was not appealed to the local body's reviewing authority); *Miles Christi*, 629 F.3d at 53 (affirming dismissal of RLUIPA and constitutional claims on ripeness grounds where city officials initially determined plaintiff's at-home religious activities required a permit and cited plaintiff for failing to obtain a SUP, but where the zoning board had not yet stated whether the local ordinance applied to plaintiff's stated use); see also e.g.s, *Yetto v. City of Jackson*, No. 17-cv-1205, 2019 WL 2715545, at *9–10 (W.D. Tenn. June 28, 2019) (dismissing case as unripe where plaintiff withdrew application for special use permit before final determination was made regarding whether ordinances applied to religious gatherings in home even though city issued a cease-and-desist order); *Oliver v. Etna Twp.*, No. 22-cv-2029, 2024 WL 1804993, at *5–6 (S.D. Ohio Apr. 24, 2024) (dismissing as unripe claims relating to rezoning application that was withdrawn before the city's decision on the application); *Daisy Invest. Corp. v. City*

*of Seven Hills*, No. 22-cv-1276, 2024 WL 3759648, at *6 (N.D. Ohio Aug. 12, 2024) (finding claim ripe where the city denied variance and sent a letter to applicant that the "mayor, administration, and city council" reviewed regarding proposed special use permit).

The district court properly applied the established Sixth Circuit law to the facts of this case.

> Moving to the facts of this case, the City neither reached nor stated a "definitive position" such that the finality requirement has been met. Grand received a cease-and-desist letter stating he needed to submit a SUP application for a "religious place of assembly." Grand promptly contacted city officials to obtain information on how to submit his application (within hours of receiving the City's letter and speaking with Brennan), applied the day after receiving the letter, and the Planning Commission held a hearing on March 4, 2021. Brennan, one voting member of the Planning Commission, expressed his views during and after that meeting. But the Planning Commission tabled Grand's petition so members could receive more information and determine the ordinance's applicability.

(R. 95, Amended Memorandum Opinion and Order at 21; PageID#: 2825.) The district court further observed that:

> Grand insisted the ordinance did not apply. After the meeting, certain members of the Planning Commission appeared to agree, with one member stating "I do not know why anyone would need a special use permit to invite 10 friends to pray with them Friday night and Saturday morning in their living room. I also do not see how this would be different then my having friends over regularly for parties." (Doc. 81-15 at 1526.) No vote was taken and no pronouncement from the Planning Commission was ever stated. Thus, like in *Insomnia, Grace Cmty. Church, Miles Christi*, and *Yetto*, the Planning Commission had not yet reached a final decision on the ordinance's applicability to Grand's small, religious gatherings. Grand also asserts Brennan's

15

comments after Grand withdrew his application are evidence of First Amendment violations, but (1) there was no longer an application pending with the city, and (2) even as Mayor, Brennan was only one member to the Planning Commission, and he is not a member of the Board of Zoning Appeals—the entity who interprets the UHCO. Cf. Miles Christi, 629 F.3d at 538 (finding no finality where entity charged with interpretation of ordinances had not yet rendered a decision on the application of the zoning code to dispute).

(R. 95, Amended Memorandum Opinion and Order at 23; PageID#: 2827.)

> **b.    Grand's argument that he allegedly suffered "immediate harm" that "is immediately ripe" based on the CADO is incorrect.**

Here, there was no "immediate harm" by the CADO. As an initial matter, the CADO is not an enforcement action and the City would have to take additional actions to impose any "harm." The CADO alone does not impose an immediate harm on Grand and ripeness is not satisfied. Based on the information the City was receiving, Defendant McConville sent the cease-and-desist letter with the email subject line referred to "Use of Premises as a Shul," and the body of the cover email referred to "proposed use of said premises for religious assembly." The letter stated in relevant part:

> I am writing to you in my capacity as Law Director for the City of University Heights (the "City"). The City has been made aware that you intend to use the premises at 2343 Miramar Boulevard (the "Premises") as a place of religious assembly and in operation of a shul. Pursuant to the zoning map and codified ordinances of the City, the premises are zoned U-1 for residential use. The use or operation of the Premises as a religious place of assembly and/or in operation as a shul or synagogue is not permitted under the City's ordinances.

16

The City hereby notifies you that the use of the Premises as a place of religious assembly and/or in operation of a shul or synagogue is prohibited. **To the extent that the Premises are currently being used for said purposes or are intended to be used for such purposes in the immediate or near future**, the City hereby demands that you immediately cease and desist any and all such operations. **Violation of the City's ordinances in this manner may result in building code citations against you and in the pursuit of additional remedies.**

…

Allow me to refer you to City Codified Ordinance Chapter 1274 entitled "Houses of Assembly and Social Service Uses." Under Chapter 1274, you may make application to the City's Planning Commission for a Special Use Permit.

(R. 81-6 at Page ID#: 1454–55, emphasis added.)

The argument Grand makes on Appeal is fatally undermined by his asserted position. (Appellant's Br. at 25 etc.) He acknowledged that he withdrew his application because the local ordinance did <u>not</u> apply. In other words, Grand asserted that his conduct was <u>not</u> subject to the prohibitions outlined in the letter. The district court explained:

Grand withdrew his application after the hearing. In so doing, he advised City officials withdrawal was appropriate because the ordinance did not apply, and no SUP was required for his small, religious gatherings. Notably, this is where the factual record ends. **There is no evidence that Grand was denied the ability to engage in small religious gatherings in his home after withdrawing the SUP application. There is no evidence the City insisted he obtain a SUP for these small religious gatherings or that it interfered with Grand's religious gatherings after he withdrew the application**. While Brennan stated the cease-and-desist order was still in effect, Grand's withdrawal of his application indicated he believed his conduct was not subject to the prohibitions in the letter.

17

(R. 95, Amended Memorandum Opinion and Order at 22; PageID#: 2826, emphasis added.)

Grand argues that precedent used by the district court were materially distinguishable, noting that the *Miles Christi* and *Murphy* courts involved cases that stayed the order pending the administrative review. (See Appellant's Br. at 27, citing *Miles Christi Religious Ord. v. Twp. Of Northville*, 629 F.3d 533 (6th Cir. 2010) and *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2nd 2005).) This argument is a diversion as there was no evidence that Grand was denied the ability to engage in small religious gatherings in his home. And there certainly was no evidence the City insisted he obtain a SUP for these small religious gatherings or that it interfered with Grand's religious gatherings after he withdrew the application. Moreover, the CADO is not an enforcement action and the City would have to take additional actions to impose any action that needed to be stayed. The CADO alone does not impose an immediate imposition on Grand. Further, there is nothing that would preclude Grand from asking for a stay pending local review, but it is somewhat non-sensical because he acknowledges that he did not "wish to operate a house of worship as is defined under the zoning ordinance, in the privacy of my home." (R. 88-4 at PageID#: 2482.)

Grand's various claims of lack of "additional safeguards" to prevent constitutional harm again misdirects from the reality in the record that Grand by his

own acknowledgment did not want to operate a house of worship under the City's zoning ordinance. (Appellant's Br. at 28.) Again, the CADO informed Grand that the use or operation of the Premises as a religious place of assembly and/or in operation as a shul or synagogue is not permitted under the City's ordinances, and "To the extent that the Premises are currently being used for said purposes or are intended to be used for such purposes in the immediate or near future, the City hereby demands that you immediately cease and desist any and all such operations." (R. 81-6 at Page ID#: 1454–55.) According to Grand, there was nothing to cease or desist because he insisted that the ordinance did not apply to prohibit small religious gatherings at his house, a point the City agrees. And the district court succinctly held:

> Simply put, the factual record before the Court is that the ordinance did not apply, Grand withdrew his application, and the City did nothing further. And while not "factual," the City's stated position in briefings before this Court is that the ordinance does not apply to Grand and that it agrees that small, religious gatherings do not require a SUP. Thus, to the extent a "definitive" statement was made, it appears such a statement was made in Grand's favor.

(R. 95, Amended Memorandum Opinion and Order at 23; PageID#: 2827.)

Similarly, Grand argues that his procedural due process claim is "immediately ripe for review." (Appellant's Br. at 30.) But, no denial of due process could cause any injury because Grand withdrew his petition. As the district court observed, "Grand's denial of due process claim is subject to the same ripeness inquiry because it is indisputably ancillary to these constitutional and statutory challenges. See

*Bigelow*, 970 F.2d at 160. And, even if it was not, Grand was afforded due process. Grand submitted a SUP application and presented it to the Planning Commission, but later withdrew it because, as he stated at the time of withdrawal, the local ordinance did not apply to small religious assemblies." (R. 95, Amended Memorandum Opinion and Order at 18; PageID#: 2822.) Grand's claim that he withdrew his application because "the unfairness of the process led Grand to withdraw his petition" is unsupported and false. (Appellant's Br. at 32.)  Grand withdrew his SUP application because, as he expressly stated in his email, "I do not wish to operate a house of worship as is defined under the zoning ordinance, in the privacy of my home." (R. 88-4 at PageID#: 2482.)

Plaintiff argues that there was immediate harm because the hearing was "quasi-judicial." (Appellant's Br. at 30.) The City's hearing provided more than adequate due process to Grand, who was represented by counsel who could present evidence or raise objection. Grand does not cite any specific precedent that suggests that his hearing caused immediate harm.  Even assuming it was true – which it is not[3] –

---

[3] It is also not correct as a matter of fact. Despite his claim that Mayor Brennan precluded any further introduction of evidence or kept items out, the Mayor does not have unilateral authority to accept or reject additional evidence. Instead, the Planning Commission, as a body, during a publicly convened meeting, determines what is in the record and to be considered in rendering a decision. Mayor Brennan wrote in correspondence that: "The Planning Commission may discuss whether additional materials are needed to make the decision on the merits. If such materials are deemed necessary, you will be given sufficient time to provide them." (R. 81-

Grand's claim that he could not produce all the evidence he wanted is not correct as a matter of law under the 2506 administrative appeal procedure, where a party can provide additional evidence during an appeal, or challenge those issues. See R.C. 2506.03. Grand did not take advantage of the process. Again, he withdrew the SUP application "because, as he stated at the time of withdrawal, the local ordinance did not apply to small religious assemblies."  Grand cites to *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991).[4] Unlike the present case, in *Nasierowski* the city council convened in executive session and materially deviated from the recommendations of the planning commission, thus subverting the purpose of the duly conducted notice and comment process. "The passage of a general zoning ordinance placing *Nasierowski's* property into a zone that had neither been recommended by the planning commission nor noticed and submitted to public scrutiny, as required under M.C.L. § 125.584(3), constituted an ultra vires act on the part of the City Council." *Id*. Neither the PC nor the City's actions were "ultra vires."

---

17, March 17, 2021 Rosenfeld email to Grand, attached to Pl. Motion, Ex. 27, Page ID#: 1533).

[4] Grand also cites a district court case that provides no assistance because that court did not issue a substantive ruling on ripeness. *AM Rodriguez Assocs., Inc. v. City Council of Vill. of Douglas*, No. 1:08-CV-214, 2009 WL 4353684, at *5 (W.D. Mich. Nov. 30, 2009) ("the Court will hold Rodriguez's procedural due process claim in abeyance pending the outcome of any state court inverse condemnation suit.').

Grand argues that Mayor Brennan's acceptance of the withdrawal of his petition as "unconstitutional" and "animated by bias and antisemitism." (Appellant's Br. at 33.) This characterization is unsupported and incorrect. A cursory review of the Mayor's statement simply states that the City will enforce its ordinances to the benefit of the entire community, which is what citizens expect and the reason these ordinances were enacted. (R. 81 at Page ID#:  1342–43.)[5] Far from Grand's characterization of his statement as an "edict," Mayor Brennan is only one vote on the planning commission, and he is not a member of the Board of Zoning Appeals— the entity who interprets the UHCO.

---

[5] Mayor Brennan stated:

"I therefore note for the record that the application is withdrawn. There is no special use permit for 2343 Miramar Boulevard. And I will remind the applicant that the cease-and-desist order of the City, dated January 21, 2021 remains in effect. Let there be no confusion, congregating at 2343 Miramar Boulevard or any other address located in a residence zoned U-1 without a special permit is a violation of city law. I'm hopeful that the wording of the withdrawal is not intended to suggest that congregating weekly at a residence to conduct activities consistent with those in a house of assembly does not require a special-use permit. As recently as two months ago, the city brought suit against the organizers of another residential shul, one on Churchill Boulevard, and ultimately obtained a permanent injunction in court.

To the community members who are here, let there be no question, there is no permission granted here to operate...a house of assembly or conduct activities consistent with one at 2343 Miramar Boulevard. If you observe such activities, and I hope you do not, but if you do, you may report them to the city, and the city will enforce its laws, which exist for the benefit of the entire community. And we will seek all appropriate remedies in court. With that I move to adjourn." (R. 81 at Page ID#: 1342–43.)

Finally, Grand argues that his "discrimination claims" fall "within the futility exception to the ripeness doctrine." (Appellant's Br at 34.) As set forth below, the "futility exception" does not apply.

Grand did not fully pursue even one SUP, yet he claims that because of his belief that some citizens expressed or implied anti-semetic sentiments that further administrative action by the Plaintiff would be futile. *Bannum, Inc. v. City of Louisville, Ky.*, 958 F.2d 1354, 1363 (6th Cir. 1992)("But, in order to successfully argue for the application of the futility exception, a plaintiff must have made at least one unsuccessful "meaningful application."). Grand's current argument is based on the cursory claim that the City "tolerated" anti-semitism and he "knew he could not get a fair hearing." (Appellant's Br. at 34.) There is no legitimate support for this claim. To make this argument, Grand mischaracterizes the testimony of members of the community at the March 4 Planning Commission meeting and claims that they're attributable to people affiliated with Gesu. For example, Grand cites testimony of Adrienne Yelsky, claiming that she was suspicious of Grand when he invited her and her husband to Sabbath – in an overt attempt to make it look like Mrs. Yelsky is suspicious of Grand's religious practices. (Appellant's Br. at 35.). In fact, Mrs. Yelsky was expressing concern that Grand had been planning on converting his home into a synagogue for some time, and she did not want anyone turning their residential block into a business area. (Transcript of March 4, 2021 Planning

23

Commission Meeting, attached to R. 81-11, Pl. Motion as Exhibit 12, 94:14-97:22;

PageID#: 1498-1499).

> I have a few concerns, and that is that we have been living here waiting
> to see what is going to happen across the street from us for over two
> years and I'm very sympathetic, of course, that there were problems
> with contracts, et cetera, et cetera, but as neighbors, we have all lived
> through this and basically almost had like bets going as to what is going
> to go in this place.
>
> Particularly, we had some suspicions early on when literally two years
> ago when the Grands moved in and we were trying to be welcoming
> and walked across the street, as did our next door neighbor, and
> introduced ourselves and upon finding that were both Jewish, Mr.
> Grand at that point said, well, when we're all finished, you know,
> maybe you guys will come over here to Sabbath. That was two years
> ago, people.
> ***
> This is a project. This is not something that he woke up two weeks ago,
> as he said in this paper – now it will be four weeks ago – and went,
> dang, that's what I should do, is cut down on the walking.

*Id.* Grand takes similar liberties with the testimony of other people to present his

selective version of the facts. Despite his current inflammatory argument, Grand

expressly withdrew his application because, "I do not wish to operate a house of

worship as is defined under the zoning ordinance, in the privacy of my home." (R.

88-4 at PageID#: 2482.)

Grand attempts to rely on *International Brotherhood of Teamsters v. United*

*States*, 431 U.S. 324 (1977) and *Payne v. Bobbie Brooks, Inc.*, 505 F.Supp. 707, 716

(N.D. Ohio 1980), two cases in the employment law context. In *Teamsters*, supra,

the court drew a narrow exception to the application requirement under *McDonnell*

*Douglas*. It held that if a consistently enforced discriminatory policy deters job applications from minorities because they "are unwilling to subject themselves to the humiliation of explicit and certain rejection," potential applicants need not apply for the job to be provided the same presumption as an applicant under *McDonnell Douglas*. The court addressed this issue in an employment context and further limited this exception to "(v)ictims of gross and pervasive discrimination." 431 U.S. at 367. This exception is not applicable to Grand. Being a victim of "gross and pervasive discrimination" is not supported under this record and is not the reason why Grand withdrew his application.

Grand also tries to analogize to a potential job applicant in *Payne v. Bobbie Brooks, Inc.*, 505 F.Supp. 707, 716 (N.D. Ohio 1980). *Payne* is of no assistance, not only because it existed in the distinguishable employment context but also because the court found that futility did not apply. Likewise, Grand cites to *BMG Monroe I, LLC v. Vill. of Monroe*, 93 F.4th 595, 601 (2d Cir. 2024), which also rejected a claim of futility. The *BMG Monroe* case observed in that Circuit that a property owner is not required to pursue applications, for example, "when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." There is nothing in this record that would suggest the Planning Commission and/or the City Council had "dug in its heels" or "made clear" that Grand's application would be denied.

> **c.    The district court properly rejected a facial argument because Grand did not develop a facial challenge and because Grand himself acknowledged that the ordinance did not apply.**

Grand accuses the district court of ignoring his "facial challenge." (Appellant's Br. at 37.)

Grand is mistaken.

The district recognized that facial challenges obviate the need for finality. But not only did Grand fail to develop a facial argument, Grand himself agreed that the City's ordinance did not apply.  The district expressly held:

> Some of Grand's statements suggest a possible facial challenge, but such a challenge is neither stated nor developed in argument. Moreover, the parties' agreement that the ordinance does not apply eliminates a facial challenge  altogether. See *Yetto*, 2019 WL 2715545, at *7 (dismissing facial challenges to ordinances where  parties agreed that plaintiffs' conduct did not qualify as operating a place of worship, and therefore, did not come within the bounds of the city's ordinances).

(R. 95, Amended Memorandum Opinion and Order at 22; PageID#: 2826.)

Grand on appeal simply argues that he had *alleged* in his operative complaint a purported facial challenge and states the basic law that facial challenges are not subject to a finality analysis. (See Appellant's Br. at 37-38.) But, Grand did not develop those arguments and claims in his summary judgment motion or opposition to summary judgment. Grand's allegations in his amended complaint do not develop an argument that the district court must flesh out, craft or advocate before it grants summary judgment. Sixth Circuit courts have consistently held that a party abandons

claims by failing to support them in a response to a motion for summary judgment. See, e.g., *Clark v. City of Dublin, OH.*, 178 Fed.Appx. 522, 524-25 (6th Cir.2006) (finding that, when a plaintiff did not properly respond to arguments asserted by a defendant's motion for summary judgment as to two claims, "the District Court did not err when it found that the Appellant abandoned (those) claims"); *Anglers of the Au Sable v. United States Forest Service*, 565 F.Supp.2d 812, 839 (E.D.Mich.2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").

The district court here did not commit any error, and certainly did not "ignore" a facial challenge. A district court does not err when it finds that an argument is not developed, thus refusing to create a defined argument for a party, and grants summary judgment. *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399 (6th Cir. 1992). Requiring district courts to search the record for genuine issues of material fact when the non-moving party fails to respond adequately would undermine judicial economy. (*Id.*) Simply put, it is the non-movant's obligation (or in this case, the movant and non-movant because Grand was both) to present all legal theories and champion their position, not the trial court's. (*Id.*) To be clear, the district court was not faced with a Civ.R. 12 motion. Rather, the district court had before it a properly asserted summary judgment motion. The district court has no duty to craft

27

an argument for Grand, and it was not subservient to an ill-defined cursory argument or mere allegations contained in a complaint that were not specifically advocated and developed.

Grand makes the passing suggestion that he actually "argued" a facial challenge in his briefing for summary judgment. (Appellant's Br. at 38.) Grand's only "argument" he can muster is a few cites to his summary judgment briefing where he made a cursory reference to the ordinance being "on its face" improper. Grand's argument is not compelling or even colorable. The district court does not err by granting summary judgment when a litigant fails to articulate a developed argument or simply mentions "a possible argument in the most s skeletal way, leaving the court to ... put flesh on its bones." See *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Using an argument he never properly articulated (and thus abandoned), Grand goes on to extensively argue a facial challenge he never made.  (Appellant's Br. at 39-45.) In essence, Grand makes the argument that he could have made at the district court level but never did. Candidly, it demonstrates that his claim is abandoned because it emphasizes a sharp contrast on what was "argued" and what he now argues. Propounding new arguments on appeal in an attempt to prompt an appellate court to reverse the trial court "undermines important judicial values." *Isaak v. Trumbull Sav. & Loan Co*., 169 F.3d 390, 396 n. 3 (6th Cir. 1999) (quoting *Estate*

*of Quirk v. Comm'r of Internal Revenue*, 928 F.2d 751, 758 (6th Cir. 1991) ("In order to preserve the integrity of the appellate structure, [appellate courts] should not be considered a 'second shot' forum, a forum where secondary, back-up theories may be minted for the first time."). Grand cannot now rely on these "allegations" in his amended complaint. And Grand cannot retroactively construct on appeal an argument that he never made or advanced, as demonstrated above. As the district court observed, Grand did not properly advance that argument. (R. 95, Amended Memorandum Opinion and Order at 22; PageID#: 2826.)

Moreover, and equally fatal to Grand's argument on appeal, the parties' agreement that the ordinance does not apply eliminates a facial challenge altogether, as the district court properly observed. (*Id*. at 22; PageID#: 2826.) Grand on appeal claims that he did not "agree" that UHCO 1274 did not apply. The record and the reality contradict his argument. On March 23, 2021, Grand withdrew his SUP application via email at 5:50 p.m., just 70 minutes before the scheduled 7 p.m. hearing. His email read:

> Mayor Brennan and Planning Commission,
> Please be advised that I'm withdrawing my application for a special use permit. **I do not wish to operate a house of worship as is defined under the zoning ordinance**, in the privacy of my home.

(R. 88-4 at PageID#: 2482, emphasis added.) The record firmly supports the district court's conclusion. There is no serious dispute that Grand represented that he did not intend to operate a house of worship in the record and his briefing. And there is no

serious dispute that the City in its briefing (and otherwise) authorizes Grand or any other citizen to hold small, informal religious gatherings (or non-religious gatherings) on a regular basis, which naturally would not be subject to any City ordinance or permitting requirements. (See R. 81 at Page ID#: 1345; R. 88 at Page ID#: 2419–20.) In Grand's summary judgment brief, he affirmatively disclaims seeking to operate a house of worship at his home.[6]

Grand argues that Mayor Brennan's statements after his withdrawal of his SUP petition somehow indicated that there was no "agreement." But, Grand mischaracterizes Mayor Brennan's statements.[7] Mayor Brennan's statements emphasize that if Grand deviated from his representation in his withdrawal letter and later violated UHCO 1274 that the ordinance would be enforced (like it would against any other citizen who violated local law). Mayor Brennan is only one vote on the planning commission, and he is not a member of the Board of Zoning Appeals—the entity who interprets the UHCO. Further, Mayor Brennan testified that

---

[6] While Grand attempts to distinguish the *Yetto* case (Appellant's Br. at 48), the district court simply cited to *Yetto v. City of Jackson* for the somewhat unremarkable and undeniable proposition that a case is unripe where a plaintiff withdraws an application for special use permit before a final determination was made regarding whether ordinances applied to religious gatherings in home even though city issued a cease-and-desist order. See *Yetto v. City of Jackson*, No. 17-cv-1205, 2019 WL 2715545, at *9–10 (W.D. Tenn. June 28, 2019); see also *Oliver v. Etna Twp.*, No. 22-cv-2029, 2024 WL 1804993, at *5–6 (S.D. Ohio Apr. 24, 2024) (dismissing as unripe claims relating to rezoning application that was withdrawn before the city's decision on the application).

[7] See footnote 3 of this Brief, setting forth Mayor Brennan's statement.

if Grand kept the Shabbos prayer at his house to ten or so people, that it would not be the business of the City and would not require a SUP. (R. 81-4, Dep. Of Mayor Brennan at 89:16-24, Page ID#: 1417). Grand's repeated suggestion that Defendants prohibited his ability to pray in his home are false and unsupported.

Moreover, Grand's withdrawal of his SUP petition would render moot the facial claim he attempts to argue in this Appeal. "A core tenet of Article III is that 'federal courts may adjudicate only actual, ongoing cases or controversies.' " *Wilson v. Gordon*, 822 F.3d 934, 941 (6th Cir. 2016) (quoting *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 595 (6th Cir. 2014)). The mootness doctrine "requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Patton v. Fitzhugh*, 131 F.4th 383, 392–93 (6th Cir. 2025). Grand unequivocally withdrew his SUP petition and the City has done nothing further. As the district court observed:

> Simply put, the factual record before the Court is that the ordinance did not apply, Grand withdrew his application, and the City did nothing further. And while not "factual," the City's stated position in briefings before this Court is that the ordinance does not apply to Grand and that it agrees that small, religious gatherings do not require a SUP. Thus, to the extent a "definitive" statement was made, it appears such a statement was made in Grand's favor."

(R. 95, Amended Memorandum Opinion and Order at 23; PageID#: 2827.) The factual record before the district court and this Court is that "the ordinance did not

apply, Grand withdrew his application, and the City did nothing further." The case is also moot.[8]

> **2.** **Despite his suggestion that ripeness cannot be raised sua sponte by the district court, Supreme Court and Sixth Circuit precedent is well established that courts must determine subject matter jurisdiction or ripeness even in the absence of a challenge from a party.**

The Supreme Court and the Sixth Circuit expressly hold that a district court must sua sponte raise issues of ripeness or subject matter jurisdiction. See *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (a court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."). The Sixth Circuit has also expressly stated that a federal court must determine whether a claim is ripe for review even if neither party has raised this issue. *Texas Gas Transmissions, LLC v. Butler County Bd. of Com'rs,* 625 F.3d 973 (6th Cir. 2010). "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Id.*, citing *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir.1992).

---

[8] While the parties did not raise mootness in the district court, courts have an independent duty to raise mootness questions, and the parties lack the ability to forfeit (or waive) mootness challenges. *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 175 (6th Cir. 2022); *Brock v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 889 F.2d 685, 687 n.1 (6th Cir. 1989).

**3.    The district court properly granted summary judgment in favor of the Defendants as to Grand's Fourth Amendment and FACE Act claims.**

**a.    Fourth Amendment Claim.**

Grand maintains that University Heights conducted an "illegal" inspection of his home that violated the Fourth Amendment.

The district court properly held:

> Grand's wife gave consent for the inspection. (Doc. 79 at 1019; Doc. 90 at 2575.) She testified to this fact. (Doc. 79-9 at 1224.) There is no dispute about her consent and no evidence from which the Court could infer that her permission was not freely given. Consensual searches do not violate the Fourth Amendment.

(R. 95, Amended Memorandum Opinion and Order at 23; PageID#: 2827.)

Despite Grand's conclusory argument, his wife testified that all inspections of Grand's home were done with her consent. (R. 79-9, Def.s' Mot. For Summ. J. at Dep. of Rakhel Davidoff, Exhibit I, at 11:5-13:25, Page ID#: 1222-1224). While it is settled that a search of property without a warrant is illegal, "[i]t is equally well settled that one of the specifically established exceptions to the requirement of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), citing *Davis v. United States*, 328 U.S. 581, 593-94 (1946). Here, there is no dispute that Grand's wife voluntarily permitted any actual inspection of the home.

33

Grand protests without developed argument that Mrs. Grand's consent to the search of the home was "as illogical as it was wrong." (Appellant's Br. at 50.) The Sixth Circuit has long held that an officer or public official's reasonable belief that even a third party had authority to consent is enough. Here, Mrs. Grand is not a third party and shares the home with Plaintiff. An analogous case is *Rhodes v. McDannel*, 945 F.2d 117 (6th Cir.1991) (per curiam), where the police received consent to enter a home from a third party who had previously called the police from that location, occasionally lived there, and "referred to the residence as her home address." *Id*. at 119. This court held that the police reasonably believed that the third party had the authority to consent to their entry. *Id*.; see also *Harajli v. Huron Twp*., 365 F.3d 501, 506 (6th Cir. 2004). Again, Mrs. Grand is not a third party; she lives in the house. The *Rhodes* case applies with even more force to the present instance.

Grand's argument is unsupported and incorrect. The district court properly granted summary judgment.

### b.    FACE Act Claim.

Grand also argues that one of the two reasons that the district court found that Grand's claim was purportedly "illogical." (Appellant's Br. at 51-52.) Even if that were the case – which it is not – Grand did not challenge (and thus concedes) the propriety of the district court's equally dispositive finding that University Heights

34

or Brennan did not use force, a threat of force, or physically obstructed Grand from seeking to exercise his First Amendment right at a place of worship.

Grand has failed to demonstrate reversible error and has effectively abandoned or waived his challenge to the district court's order dismissing the FACE claim by failing to address the district court's dispositive reasoning and judgment. See *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir.2004). Setting waiver aside, the district court properly held the FACE Act claim was barred.

The FACE Act, codified at 18 U.S.C. § 248, protects individuals from being intimidated or prohibited from entering a place of worship. Specifically, the Act imposes civil liability on those who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempt to injure intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2).

The district court held:

> Grand presented no evidence University Heights or Brennan used force or a threat of force within the meaning of the FACE Act. A "threat of force" under the FACE Act means "a statement which, in the entire context and under all the circumstances, a reasonable person would foresee would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." *Planned Parenthood of Columbia/Willametter, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002); *United States v. Hart*, 212 F.3d 1067, 1071 (8th Cir. 2000) (same). There is no indication that Grand, or his friends, would be subject to

35

> arrest for any violations of any order by University Heights or Brennan. Grand makes no effort to explain why a police presence or resident reporting would result in an arrest. In fact, in the cease-and-desist letter, University Heights communicated to Grand that violations of the City's ordinance "may result in building code citations against you and...the pursuit of additional remedies." (Doc. 79-3 at 1205.) Grand presents no evidence he or others were ever at risk of arrest.

(R. 95, Amended Memorandum Opinion and Order at 31; PageID#: 2835.) Again,

Grand did not challenge this finding.

Setting aside again that Grand failed to offer any argument on a dispositive

issue, the district court also properly concluded that Grand by his own

acknowledgment could not satisfy a critical element of the FACE Act.

> Grand unequivocally disavowed using his home as a "place of worship." For his FACE Act claim to survive, Grand would have to present facts that his home was "primarily used for religious worship," which he cannot do.

(R. 95, Amended Memorandum Opinion and Order at 33; PageID#: 2837.)

While the district court simply applied the text of the FACE Act's requirement

that it must involve a place of worship, Grand argues that he does not find the holding

of *Jingrong* persuasive, as the district court did. Simply put, the district court found

that Grand did not establish that his home was "primarily used for religious

worship."

The district court properly relied on *Jingrong v. Chinese Anti-Cult World All.

Inc.*, 16 F.4th 47, 58–59 (2nd Cir. 2021) as persuasive. The lower court explained:

In *Jingrong*, the Second Circuit found the phrase "place of worship" in the FACE Act ambiguous. *Id*. at 58. For instance, a "place of worship" could mean a specific building used only for religious purposes, or it could feasibly mean places "such as a public-school classroom where a religious student group meets at lunchtime or a café where believers gather to study and discuss religious texts." *Id*. However, in analyzing the legislative history, the Second Circuit concluded "Congress did not intend all locations where incidental worship activities occur to qualify as 'places of religious worship.' " Id. at 59. The court explained:

> "Places of religious worship" may be fixed or moveable, enduring or temporary, bounded within a structure or structureless. But the basic feature of "a place of religious worship," as recognized by Congress, is that religious adherents collectively recognize or religious leadership designates the place as one primarily for religious worship.

*Id*. Under that reading of the statute, plaintiffs could not maintain a cause of action where the alleged "place of worship" were tables set up on a sidewalk. Id. at 60.

(R. 95, Amended Memorandum Opinion and Order at 33; PageID#: 2837.)

### 4. The Amicus DOJ's argument is improper under the Party Presentation Rule and is otherwise incorrect.

The primary argument that Amicus Party makes is that RLUIPA's finality requirement does not apply to all of the RLUIPA claims that Grand alleged in his complaint. (See generally Amicus Br.)  Grand himself did <u>not</u> raise this argument to this Court and thus it cannot be raised by an amicus party. (See generally Appellant's Br.) Further, unlike the limited cases outside of the Circuit that the the Amicus Party relies, the Sixth Circuit generally applies the finality requirement of ripeness to RLUIPA claims.

### a. The Party Presentation Rule bars the DOJ's argument that was not raised by the parties in this appeal.

The Sixth Circuit has expressly held that when an amicus raises issues that exceed those presented by the parties, that the Court "may not consider such issues." *In re Isaacs*, 895 F.3d 904, 917 (6th Cir. 2018). This Court explained, "While an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties. To the extent that the amicus raises issues or make[s] arguments that exceed those properly raised by the parties, we may not consider such issues." *Id.*, citing *Cellnet Commc'ns, Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998) (internal citations omitted); see also *United States v. Sineneng-Smith*, 140 S.Ct. 1575 (2020)(unanimously holding that the appellate panel abused its discretion and violated the party presentation rule).

The DOJ's argument that the finality requirement does not apply to all RLUIPA claims was forfeited by Grand and cannot be raised by the Amicus Party. See also *In re Issacs*, 895 F.3d 904, 917 (6th Cir. 2018) (finding amici curiae's independent claim that mortgage could be avoided as a preferential transfer was forfeited because it was not included in the appellant's opening brief).

Grand did not raise this issue in his opening brief. Indeed, Grand unequivocally did not attempt to override Sixth Circuit precedent, as the DOJ Amicus Party attempts to do by arguing that the Circuit should follow the Eleventh and First circuits on this issue. (See generally Appellant's Br.; compare with the DOJ Amicus Party at 18 etc., citing *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach*,

727 F.3d at 1357 (11th Cir.) and *Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78 (1st Cir. 2013).)

Sixth Circuit law is well-established that while an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties. Here, the DOJ Amicus Party raises issues and makes arguments that exceed those properly raised by Grand and this Court may not consider such issues. The Supreme Court, the Sixth Circuit and other Circuits routinely reject newly crafted issues/arguments made by amicus parties. See e.g., *In re Isaacs*, supra; *United States v. Sineneng-Smith*, supra; see also e.g.s, *Dalombo Fontes v. Gonzales*, 498 F.3d 1, 2 (1st Cir. 2007) ("[W]e will not address an issue raised by an amicus that was not seasonably raised by a party to the case."); *Christopher M. ex rel. Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1293 (5th Cir. 1991) ("Absent exceptional circumstances, an issue waived by [an] appellant cannot be raised by [an] amicus curiae.").

The party presentation rule prohibits an amicus party from raising legal issues that were not raised by the parties at the lower court or the appellate court level. This is a natural rule the ensures that issues are properly presented by the parties, maintaining the integrity of the adversarial process.

> **b.    The Sixth Circuit rejects the DOJ's argument applying the finality/ripeness requirement to all RLUIPA claims.**

39

Despite the DOJ's argument being improper, the finality requirement of ripeness applies to all types of RLUIPA claims in the Sixth Circuit. Therefore, the remand it seeks on behalf of Grand is unwarranted and unnecessary. The finality requirement in the Sixth Circuit mandates that the governmental entity charged with implementing the regulations must have reached a final decision regarding the application of the regulations to the property at issue before a claim can be considered ripe for judicial review. See *Community Church v. Lenox Tp*., 544 F.3d 609 (6th Cir. 2008); see also *Insomnia, Inc., supra;* see also, *Elvis Presley Enters., Inc. v. City of Memphis, Tennessee*, No. 2:18-CV-2718, 2020 WL 6163564, at *6 (W.D. Tenn. Oct. 21, 2020).

The Amicus Party points out that the finality requirement originated in the context of a takings claim. (Amicus Br. at 14-15 citing *Nasiewrowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991), *Pakdel v. City of San Francisco,* 594 U.S. 474, 478 (2021) etc.) But, the Sixth Circuit and other circuits have consistently extended the finality requirement to First Amendment retaliation claims, RLUIPA claims, and other claims. See *Dubuc v. Twp. of Green Oak*, 406 F. App'x 983, 990-91 (6th Cir. 2011); *Insomnia, Inc., supra; Grace Cmty. Church v. Lenox Twp.,* 544 F.3d 609, 615 (6th Cir. 2008); see also, *Elvis Presley Enters., Inc., supra; Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2nd Cir. 2005). Contrary to the Amicus Party's effort to impose the precedent of another circuit and

narrowly limit the finality requirement to a claim that turns on how an ordinance applies to a specific property, the Sixth Circuit has taken a different approach that is the law of this Circuit.

In *Miles Christi Religious Order v. Township of Northville*, the Sixth Circuit emphasized that the ripeness doctrine encompasses both Article III limitations on judicial power and prudential reasons that lead federal courts to refuse to exercise jurisdiction in certain cases. The court held that the finality requirement is critical in land-use contexts, including RLUIPA claims, and requires that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute. *Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010).  This Court noted that this requirement is rooted in ripeness considerations and has been applied to various constitutional and statutory challenges to local land-use requirements, including RLUIPA claims. *Id*.

While the Amicus Party argues that the finality requirement does not apply to all RLUIPA claims by citing cases from another circuit, the Sixth Circuit has explained that there are numerous reasons why that is the law in this Circuit. "First ... requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record.... Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel.... Third, a variance might provide the relief the

41

property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible.... Finally, since *Williamson County*, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution." *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008).

The Amicus Party cites *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach*, 727 F.3d at 1357 (11th Cir.) and *Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78 (1st Cir. 2013) to argue that finality is not required. (Amicus Br. at 18.) But, *Temple B'Nai* and *Roman* are contrary Sixth Circuit precedent and not binding on this Court. *Temple B'Nai* and *Roman* analyzed ripeness using the traditional ripeness inquiry, rather than using *Williamson* County's final-decision requirement, which is required in this Circuit. Further, the present case is before the Court in the context of summary judgment and Amicus Party's reference to Grand's "alleged: discrimination" is unsupported. (Amicus Br. at 18.)

Further, Amicus Party's claim that the finality requirement is inapplicable to RLUIPA cases involving a facial violation of the statute's land use protections" may

42

be correct as far as it goes. (*Id*.) But, as the district court recognized and the record firmly establishes, not only did Grand fail to develop a facial argument, but Grand agreed that the City's ordinance did not apply. As previously demonstrated in this Brief and as the district expressly held:

> Some of Grand's statements suggest a possible facial challenge, but such a challenge is neither stated nor developed in argument. Moreover, the parties' agreement that the ordinance does not apply eliminates a facial challenge  altogether. See Yetto, 2019 WL 2715545, at *7 (dismissing facial challenges to ordinances where  parties agreed plaintiffs' conduct did not qualify as operating a place of worship, and therefore, did not come within the bounds of the city's ordinances).

(R. 95, Amended Memorandum Opinion and Order at 22; PageID#: 2826.) Grand did not pursue this argument, and the Amicus Party cannot raise it now.

### 5. The district court did not abuse its discretion when it declined supplemental jurisdiction over Grand's state mandamus claim under the Ohio Public Records Act.

The district court properly exercised its discretion to decline supplemental jurisdiction over Grand's Ohio Public Records Act claim.

A district court's supplemental jurisdiction under § 1367 is discretionary, not mandatory. See *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011) ("Although the district court may exercise supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, supplemental jurisdiction is discretionary, not mandatory.").

"A district court's decision declining to exercise supplemental jurisdiction to hear a plaintiff's state-law claims and remanding those claims to state court is an appealable decision that we review under the abuse-of-discretion standard." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir.2010); see also 28 U.S.C. § 1367(c)(3) (authorizing remand). "An abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Gamel*, 625 F.3d at 951 (internal citations omitted).

Grand's Public Records Act claim is an independent claim in this litigation. Ohio courts are best suited for evaluating this type of claim, which federal courts do not typically address. Grand did not offer any caselaw that would authorize or provide an example of a federal court granting mandamus relief under Ohio's Public Records Act. This type of claim is generally reserved for Ohio courts, specifically the Supreme Court of Ohio, intermediate appellate courts and common pleas courts, which all have original jurisdiction to hear such cases and grant such extraordinary relief.

Grand does not offer any developed argument. His one short paragraph in his merits brief does not and cannot leave the Court with a "definite and firm conviction that the district court made a clear error of judgment" when it declined supplemental jurisdiction over his state Public Records Act claims. See *Gamel*, 625 F.3d at 951.

44

Comity to state courts is considered a substantial interest; therefore, this Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed—retaining residual jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir.2006); accord *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir.2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

### 6. Grand has abandoned or waived his claims for abuse of process, malicious prosecution, conspiracy, intentional infliction of emotional distress, invasion of privacy, and common law right to worship.

The district court properly held that Grand failed to oppose summary judgment with regard to several of the above noted claims, thus conceding them. On Appeal, Grand failed to argue those claims and has further abandoned or waived various other claims/arguments when he did not raise an argument in his initial merits brief.

"[A]n 'appellant abandons all issues not raised and argued in its initial brief on appeal.' " *J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721, 730 (6th Cir. 2022) (citation omitted). And "it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id.* (citation omitted); see also

45

*United States v. Russell*, 26 F.4th 371, 374−75 (6th Cir. 2022) ("[I]f an argument is waived, we don't consider it ... [And] to waive the argument, the [party] must either (1) take some step to expressly abandon it or (2) fail to raise it in its first brief on appeal.") (internal citation and quotation omitted).

## VII.  CONCLUSION

This Court must affirm the lower court's judgment entry because the district court:

- Properly dismissed counts one through three and five through twelve because they were not ripe.
- Properly granted summary judgment in favor of the Defendants as to Grand's Fourth Amendment and FACE Act claims.
- Properly exercised its discretion when it declined supplemental jurisdiction over Grand's state mandamus claim under the Ohio Public Records Act.

Respectfully submitted,

MAZANEC, RASKIN AND RYDER CO., L.P.A.

*s/Frank H. Scialdone*
FRANK H. SCIALDONE  (0075179)
STEVEN K. KELLEY (0023747)
ZACHARY W. ANDERSON (0095921)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
fscialdone@mrrlaw.com
skelley@mrrlaw.com
zanderson@mrrlaw.com

Counsel for Defendants/Appellees City of
University Heights, Michael Dylan Brennan, Luke
McConville and Paul Siemborski

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count is 12,909 using proportionally spaced

Times New Roman, 14-point font, in Microsoft Word 365 format.

*s/Frank H. Scialdone*
FRANK H. SCIALDONE  (0075179)
STEVEN K. KELLEY (0023747)
ZACHARY W. ANDERSON (0095921)

Counsel for Defendants/Appellees City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing Brief of Defendants/Appellees City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski will be served upon all counsel of record via the Court's CM/ECF system on this 30th day of May, 2025.

*s/Frank H. Scialdone*
FRANK H. SCIALDONE  (0075179)
STEVEN K. KELLEY (0023747)
ZACHARY W. ANDERSON (0095921)

Counsel for Defendants/Appellees City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski

## ADDENDUM: DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

| RECORD ENTRY NO. | DOCUMENT DESCRIPTION | BEGINNING PageID# |
|---|---|---|
| R. 67 | Second Amended Complaint | 573-641 |
| R. 79 | Motion for Summary Judgment | 1001-1226 |
| R. 81 | Motion for Partial Summary Judgment | 1328-1542 |
| R. 88 | Response too Mot. for Partial Summary Judgment | 2408-2502 |
| R. 89 | Brief in Opp. to Motion for Summary Judgment | 2503-2560 |
| R. 90 | Reply in Support of Motion for Summary Judgment | 2561-2588 |
| R. 91 | Reply in Support of Motion for Partial Summary Judgment | 2589-2668 |
| R. 95 | Amended Memorandum Opinion and Order | 2805-2841 |
| R. 97 | Notice of Appeal | 2843 |

*s/Frank H. Scialdone*

FRANK H. SCIALDONE  (0075179)
STEVEN K. KELLEY (0023747)
ZACHARY W. ANDERSON (0095921)

Counsel for Defendants/Appellees City of University Heights, Michael Dylan Brennan, Luke McConville and Paul Siemborski

50