**No. 24-3876**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

**DANIEL GRAND,**
*Plaintiff–Appellant,*

V.

**CITY OF UNIVERSITY HEIGHTS, OH; MICHAEL DYLAN
BRENNAN, MAYOR, IN HIS OFFICIAL AND INDIVIDUAL
CAPACITY; LUKE MCCONVILLE, CITY LAW DIRECTOR, IN HIS
INDIVIDUAL CAPACITY; PAUL SIEMBORSKI, CITY PLANNING
COMMISSION MEMBER, IN HIS INDIVIDUAL CAPACITY**

*Defendants–Appellees.*

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
THE HONORABLE BRIDGET MEEHAN BRENNAN, DISTRICT
JUDGE PRESIDING NO. 1:22-CV-1594**

_____

**REPLY BRIEF FOR PLAINTIFF–APPELLANT DANIEL GRAND**

_____

---

Eden P. Quainton
Quainton Law, PLLC
2 Park Avenue, 20th Floor
New York, NY 10016
(212) 419-0575
eden.quainton@quaintonlaw.net
*Counsel for Plaintiff–Appellant*

**Oral Argument Requested**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff–Appellant respectfully maintains that oral argument is warranted. This case presents serious constitutional issues, including violations of the First and Fourteenth Amendments and the reach of the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Freedom of Access to Clinic Entrances (FACE) Act. These issues are legally significant and factually nuanced, and the Court would benefit from the opportunity to clarify key points through oral advocacy.

# **TABLE OF CONTENTS**

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CONTENTS.............................................................. ii

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION ....................................................................... 1

ARGUMENT ............................................................................. 3

  I.    The City's Ripeness Argument Rests on a Misapplication of Law ... 3

    A.    The Ripeness Doctrine Does Not Apply to Grand's Facial Challenge to UHCO 1274. ........................................................ 3

    B.    The Ripeness Doctrine Does Not Apply to Final Decisions That Affect Parties' Substantive Constitutional Rights.................................... 8

    C.    The Ripeness Doctrine Does Not Apply When a Law or Rule Is Arbitrarily Applied Based on Credibility Determinations. .................... 10

    D.    The Ripeness Doctrine Does Not Apply When a Party is Subject to Ongoing and Categorical Ban on the Exercise of First Amendment Rights.................................................................................. 11

    E.    Appellees Authorities Are Easily Distinguishable. ...................... 15

  II.    The Quasi-Judicial Hearing Denied Grand Due Process................. 17

    A.    Grand Did Not Receive Prior Notice of the Unprecedented Quasi-Judicial Nature of the SUP Hearing or a Fair Opportunity to be Heard. 17

      1.    The Absence of Prior Notice. .................................................... 17

      2.    Denial of a Fair Opportunity to Be Heard. ................................ 19

  III.    The DOJ's Amicus Brief Deserves Substantial Weight .................. 21

  IV.    The District Court's Sua Sponte Dismissal Was Improper ............. 23

  V.    Summary Judgment Was Improper on the FACE Act Claim.......... 25

  VI.    The Court Should Retain Jurisdiction Over the State Law Claim ... 27

CONCLUSION........................................................................... 29

CERTIFICATE OF COMPLIANCE............................................. 30

CERTIFICATE OF SERVICE ..................................................... 31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Metiva*,
   31 F.3d 375, 384 (6th Cir. 1994) ................................................................ 11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 255 (1986) ........................................................................... 11

*Armstrong v. Manzo*,
   380 U.S. 545, 552 (1965) ........................................................................... 17

*Bachman v. Bagley*,
   487 F.3d 979, 982 (6th Cir. 2007) ............................................................. 24

*Bigelow v. Michigan Dep't of Nat. Res.*,
   970 F.2d 154, 160 (6th Cir. 1992) ............................................................. 19

*Blakely v. United States*,
   276 F.3d 853 (6th Cir. 2002) ..................................................................... 28

*Board of Airport Comm'rs v. Jews for Jesus, Inc.*,
   482 U.S. 569, 574–75 (1987) ...................................................................... 6

*Broadrick v. Oklahoma*,
   413 U.S. 601, 612 (1973) ............................................................................. 6

*Catz v. Chalker*,
   142 F.3d 279, 285 (6th Cir. 1998) ............................................................. 24

*Cellnet Commc'ns, Inc. v. F.C.C.*,
   149 F.3d 429, 443(6th Cir. 1998) .............................................................. 22

*City of Houston v. Hill*,
   482 U.S. 451, 458 (1987) ............................................................................. 6

*Connally v. Gen. Constr. Co.*,
   269 U.S. 385, 391 (1926) ............................................................................. 8

*Cox v. Louisiana*,
    379 U.S. 536, 551 (1965)......................................................................... 4, 5

*Evans v. Chater*,
    110 F.3d 1480, 1483 (9th Cir.1997) ......................................................... 19

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239, 253 (2012)........................................................................... 7

*Gamel v. City of Cincinnati*,
    625 F.3d 949, 951 (6th Cir. 2010). .......................................................... 29

*Gonzalez v. Sullivan*,
    914 F.2d 1197, 1202 (9th Cir.1990) ......................................................... 19

*Grace Cmty. Church v. Lenox Twp.*,
    544 F.3d 609, 615 (6th Cir. 2008) ................................................... 9, 15, 16

*Harris v. County of Riverside*,
    904 F.2d 497, 501 (9th Cir. 1990) ........................................................... 19

*Hastings v. Jud. Conf. of U.S.*,
    829 F.2d 91, 105 (D.C. Cir. 1987)............................................................... 4

*Hirsch v. CSX Transp., Inc.*,
    656 F.3d 359, 362 (6th Cir. 2011) ........................................................... 11

*In re Isaacs*,
    895 F.3d 904 (6th Cir. 2018) ............................................................ 22, 23

*Insomnia, Inc. v. City of Memphis, Tenn.*,
    278 Fed. Appx. 609, 2008 WL 2121053 (6th Cir. May 20, 2008).. 9, 15, 16

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
    16 F.4th 47 (2nd Cir. 2021) ..................................................................... 25

*Knick v. Township of Scott*,
    588 U.S. 180, 185 (2019)......................................................................... 19

*Kunz v. New York,* 340 U.S. 290, 294 (1951) .................................................. 5

*Lakewood v. Plain Dealer Publ'g Co.,*
   486 U.S. 750, 755-57 (1988) .................................................... 5, 8

*Mathews v. Eldridge,*
   424 U.S. 319, 333 (1976)........................................................... 17

*Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14 (1978)............. 17

*Miles Christi Religious Ord. v. Twp. of Northville,*
   629 F.3d 533, 537 (6th Cir. 2010) .................................................. 9, 15, 16

*Nasierowski Bros. Inv. Co. v. City of Sterling Heights,*
   949 F.2d 890, 896 (6th Cir. 1991) .................................................. 19, 20, 21

*Near v. Minnesota,*
   283 U.S. 697, 713–14 (1931) ...................................................... 13

*Pakdel v. City & County of San Francisco,*
   594 U.S. 474, 478 (2021)........................................................... 6, 8

*Patsy v. Board of Regents,*
   457 U.S. 496 (1982)................................................................. 18

*Roman Cath. Bishop of Springfield v. City of Springfield,*
   724 F.3d 78, 90 (1st Cir. 2013).................................................... 13

*Saia v. New York,*
   334 U.S. 558 (1948)................................................................. 6

*Shuttlesworth v. Birmingham,*
   394 U.S. 147, 151 (1969)........................................................... 5

*Skidmore v. Swift & Co.,*
   323 U.S. 134, 140 (1944)........................................................... 23

*Staub v. City of Baxley,*
   355 U.S. 313, 321–322 (1958) .................................................... 5

*Steffel v. Thompson,*
    415 U.S. 452, 459 (1974) .................................................................... 6, 25

*Teague v. Lane,*
    489 U.S. 288, 300 (1989) ......................................................................... 22

*Tingler v. Marshall,*
    716 F.2d 1109, 1112 (6th Cir. 1983) ....................................................... 24

*United States v. Davis,*
    139 S. Ct. 2319, 2325 (2019) ..................................................................... 8

*United States v. Sineneng-Smith,*
    140 S. Ct. 1575 (2020) ............................................................................. 23

*United States v. Williams,*
    553 U.S. 285, 304 (2008) ........................................................................... 4

*Williams v. Reed,*
    604 U.S. ___ (2025) ................................................................................. 19

*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank,*
    473 U.S. 172, 193 (1985) ...................................................................... 8, 20

*Zwickler v. Koota,*
    389 U.S. 241 (1967) ................................................................................... 4

**Statutes**

18 U.S.C. § 248(a)(2) ......................................................................... 26, 27

28 U.S.C. § 1367(a) ................................................................................. 28

Ohio Public Records Act, Ohio Rev. Code § 149.43 .................................. 28

University Heights Codified Ordinance Chapter 1242.99(a) ....................... 14

University Heights Codified Ordinance Chapter 1274  1, 3, 6, 7, 8, 11, 25, 26

**Other Authorities**

*The Importance of Praying with a Minyan*, http://bit.ly/44GzSlw............... 12

## **INTRODUCTION**

Plaintiff–Appellant Daniel Grand ("Grand"), an observant Orthodox Jew, challenges a zoning decision by the City of University Heights (the "City") that imposed unprecedented restrictions on his First and Fourteenth Amendment, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and Freedom of Access to Clinic Entrances ("FACE") Act protections.

The Mayor of University Heights Michael Brennan ("Brennan"), under color of University Heights Codified Ordinance Chapter 1274 ("UHCO 1274" or the "Ordinance"), issued a cease-and-desist order (the "CADO") categorically barring Grand from holding any religious assembly in his home without first obtaining a Special Use Permit (an "SUP"), a condition never before imposed on comparable secular activities. This mandate was chilling, preemptive, punitive, and explicitly grounded in Brennan's personal belief that Grand was "not credible." The City next subjected him to a hostile, improvised quasi-judicial hearing on unequal terms with other applicants.

When Grand withdrew his application, Brennan issued a new and even more sweeping and chilling edict that the City would prosecute any "congregating" in private homes to perform any activities "consistent with those" of a house of assembly (the "March 23 Edict"). Brennan even

1

encouraged citizens to monitor each other and report suspicious activities to the authorities so that "appropriate" measures could be taken. The March 23 Edict came immediately after Grand had explained to the entire community the precise nature of his intentions and yet specifically targeted Grand for potentially criminal activity at his home which citizens were encouraged to monitor carefully. Then, in a twist lacking credibility, the City claimed that Grand's withdrawal was an acknowledgment that no violation had occurred and that the parties all "agreed" that the activity that led the City and the Mayor to issue the CADO, require an SUP, subject Grand to an unprecedented quasi-judicial hearing, and issue a chilling enforcement edict was never of any concern.

Now, on appeal, the City seeks to evade scrutiny by arguing that Grand's claims were not ripe. But the CADO, the March 23 Edict, and Grand's cancellation of religious activities under threat of criminal sanctions all constitute actionable harm under both constitutional and statutory frameworks.

To affirm the district court's dismissal under these circumstances would embolden local governments to suppress religious exercise based on subjective distrust or animus. Instead, this Court must reaffirm that religious liberty and due process are not negotiable when exercised in a private home.

# **ARGUMENT**

**I.    The City's Ripeness Argument Rests on a Misapplication of Law**

    A.   The Ripeness Doctrine Does Not Apply to Grand's Facial Challenge to UHCO 1274.

The record makes clear that Grand raised *both* facial and as-applied challenges to UHCO 1274. *See* R. 67, Second Am. Complaint; PageID#: 573, 622. The District Court's conclusion that Grand had waived his facial challenges to the Ordinance runs against the plain language of Grand's pleadings and his consistently maintained arguments. R. 95, Amended Memorandum Opinion and Order at 22; PageID#: 2826.

On its face, the Ordinance is vague, ambiguous and overly broad, with an inherent risk of arbitrary and unprincipled application. The Ordinance requires "houses of assembly" to obtain an SUP without defining the term except by reference to other undefined terms, such as "houses of worship or religious education, including churches, temples, synagogues, religious organizations, parish houses and parochial schools." UHCO Chapter 1274, Houses of Assembly and Social Service Uses; *see* Section 1274.01(b)(1). "House of worship," "church" and even "synagogue" are not self-defining terms, as this litigation has demonstrated, with Grand's proposed prayer room being artificially recharacterized as a "house of worship." R-83-1 ("Brennan Tr.") PageID#: 1880. The Mayor himself acknowledged he was

unsure whether Grand's prayer "room" could be a "house" or when a "synagogue" was a "synagogue."  (Brennan Tr. PageID# 1902: 7-13).

> Q: And does a shabbos shul of that type,
> does that meet your definition of a full-blown
> synagogue?
> A. I don't know. I mean, probably not,
> because if you're not there every day, then it's
> not a full-blown synagogue, but is it still a
> synagogue? I don't know the answer to that.
> I also don't know if it still doesn't
> qualify as a house of worship.

The Ordinance is thus facially invalid on both vagueness and overbreadth grounds. *See e.g.*, *Hastings v. Jud. Conf. of U.S.*, 829 F.2d 91, 105 (D.C. Cir. 1987) *(citing generally Zwickler v. Koota,* 389 U.S. 241 (1967) ("[a] vague law denies due process by imposing standards of conduct so indeterminate that it is impossible to ascertain just what will result in sanctions; in contrast, a law that is overbroad may be perfectly clear but impermissibly purport to penalize protected First Amendment activity"); *see also*, *United States v. Williams*, 553 U.S. 285, 304 (2008) ("Although ordinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,' we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech."); *Cox v. Louisiana*, 379 U.S. 536, 551 (1965) (holding statute facially invalid because

4

it is "unconstitutionally vague in its overly broad scope"); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) (holding heightened vagueness standard applies where statute implicates free speech).

Here both vagueness and overbreadth concerns are present on the Ordinance's face. "Houses of worship" cannot be equally regulated without sweeping into the Ordinance's net likely protected activity, such as, for example, erecting a sukkah (or religious tent in which observant Jews reside and pray during the holiday of Sukkot commemorating the Israelites wandering in the desert during the Exodus) in a homeowner's backyard. At the same time, when, if ever, a "room" becomes a "house" is paradigmatically indeterminate and hence vague—a threshold problem for which the statute provides no guidance. Whether a "shul" is a "synagogue" is both indeterminate without more context, and a problem of overbreadth, as Grand has shown. (*See* Appellant's Opening Brief at 7, 40–42; *see also* Brennan Tr. PageID# 1862). The Ordinance thus placed "unbridled discretion" in hands of government officials, raising "identifiable risks to free expression that can be effectively alleviated only through a facial challenge." *See Lakewood v. Plain Dealer Publ'g Co*., 486 U.S. 750, 757 (1988) (*citing Shuttlesworth v. Birmingham,* 394 U.S. 147, 151 (1969); *Cox v. Louisiana,* 379 U.S. 536, 557–558 (1965); *Staub v. City of Baxley,* 355 U.S. 313, 321–322 (1958); *Kunz v.*

5

*New York,* 340 U.S. 290, 294 (1951); *Niemotko v. Maryland,* 340 U.S. 268 (1951); *Saia v. New York,* 334 U.S. 558 (1948).

Such a manifestly overbroad government directive fails on its face. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *City of Houston v. Hill*, 482 U.S. 451, 458 (1987); *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574–75 (1987). A plaintiff need not wait to be fined or prosecuted to challenge an enforcement action pursuant to an unconstitutional ordinance *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[i]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute…") *See also Pakdel v. City & County of San Francisco*, 594 U.S. 474, 478 (2021).

The City offers no substantive defense of the statute against Grand's facial challenges, instead arguing that Grand waived his facial challenge because he allegedly "agreed" that the Ordinance did not apply to him. (Appellee's Br. 9, 19, 26). This argument is unpersuasive and is contradicted by the City's own written directive and enforcement posture. The City declared Grand's intended Sabbath prayer gatherings "unlawful," violative of UHCO 1274, and threatened enforcement action both through the CADO and the March 23 Edict. The City's and its representatives' actions established

6

their position definitively, unconditionally, and injuriously.[1] For his part, Grand has consistently asserted that he has suffered a constitutional harm beginning with the issuance of the CADO through to the present. The Court should have no difficulty dispensing with the argument that he "agreed" he has not been harmed by conduct he has spent years challenging. *See* Second Amended Complaint Paragraphs 96–102 and 133–143 (PageID#s: 616–623, 631–63.)

Appellees' after-the-fact position that Grand misunderstood the City's intent is both legally and factually untenable. It was the City's burden to express its enforcement stance clearly, not Grand's burden to guess at unstated carve-outs. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253

---

[1] The CADO stated: "The City hereby notifies you that the use of the Premises as a place of religious assembly and/or in operation of a shul or synagogue is prohibited… The City hereby demands that you immediately cease and desist any and all such operations…Allow me to refer you to City Codified Ordinance Chapter 1274 [pursuant to which] you may make application" to the City's Planning Commission for a Special Use Permit." The March 23 Edict affirmed that "***congregating weekly at a residence to conduct activities consistent with those in a house of assembly"*** required an SUP and specifically underscored that no permission was granted to Grand to "conduct ***activities consistent with [a house of assembly] at 2343 Miramar Boulevard***" and that any attempt to violate the ban on conducting such activities would be prosecuted with "all appropriate remedies in court." This language reflects a final, coercive governmental position with legal consequences, satisfying the finality requirement of the ripeness doctrine.

(2012); *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926); *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). The record is devoid of any suggestion that the SUP requirement was conditional or discretionary.

Appellees also insist that Grand failed to properly plead or preserve a facial challenge to the Ordinance, so his claims must be viewed solely as as-applied challenges. This framing mischaracterizes the pleadings, *see supra* at 8, distorts the applicable legal standards, and attempts to sidestep the constitutional implications of an ordinance that vests unbounded discretion in City officials and chills religious expression on its face.

Appellees overlook the governing legal standard: a facial challenge is proper where a law "vests unbridled discretion in a government official" because its "mere existence…coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-57 (1988). As discussed, UHCO 1274 plainly fails this test.

B.    The Ripeness Doctrine Does Not Apply to Final Decisions That Affect Parties' Substantive Constitutional Rights.

A land use decision is "final" when the government has made a definitive determination that affects the plaintiff's use of property and imposes tangible consequences. *Pakdel*, 594 U.S. at 478 ("nothing more than de facto finality is necessary"); *Williamson Cnty. Reg'l Plan. Comm'n v.*

*Hamilton Bank*, 473 U.S. 172, 193 (1985). In connection with land use regulation, finality is "critical to the ripeness inquiry," along with "…'the hardship to the parties if judicial relief is denied at this stage in the proceedings.'" *Grace Cmty. Church v. Lenox Twp*., 544 F.3d 609, 615 (6th Cir. 2008) (quoting *Insomnia, Inc. v. City of Memphis*, Tenn., 278 Fed. Appx. 609, 2008 WL 2121053 (6th Cir. May 20, 2008)); M*iles Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010).

The CADO was definitive, preemptory and final in tone and intent. *See supra* at 7 and Note 1. Nowhere did the City suggest that Grand could proceed without a SUP if his gathering remained small, private, or occasional. The determination contained no qualifications, exceptions, or invitation to appeal or argue about the Ordinance's applicability. It bore all the hallmarks of finality: an unambiguous command backed by immediate legal threat.

Grand understood this as a prohibition: that the City "already had this decided." R. 80, Grand Dep. PageID#: 1270. Grand canceled his prayer gathering shortly thereafter, reflecting both the coercive effect of the City's determination and the chilling of his religious exercise.

The City, too, manifested its actions as definitive prohibitions. As noted earlier, the CADO contained no language about appeal, or any interim measures to protect Grand's rights, such as limiting the number of attendees

at a prayer session pending administrative review of an SUP application. The March 23 Edict was as final as one could imagine, stating expressly that "congregating" at Grand's residence to conduct any activities "consistent with" those of a house of worship constituted a violation and would be subject to prosecution. R. 83-1, Brennan Dep., PageID#: 2054.

C.    The Ripeness Doctrine Does Not Apply When a Law or Rule Is Arbitrarily Applied Based on Credibility Determinations.

The City's justification for its actions rests almost entirely on Brennan's personal disbelief in Grand's sincerity and credibility and his resulting aim of stopping Grand preemptively from hosting an upcoming gathering, regardless of any size limitations: "Well, yes, because, as I explained, shabbos was coming up and it seemed to me that responding proactively right away… if it turned out that this was all some elaborate prank, that Mr. Grand wasn't actually doing anything at his house…" R. 83-1, Brennan Dep., PageID#: 1965. "**And in the limited amount of time that we had here**, sending Mr. Grand a letter to let him know that if this is what he's doing, he's to cease and desist." R. 83-1, Brennan Dep., PageID#: 1967. "I don't find Mr. Grand credible generally… I don't find what he says to be truthful in general. So I was less concerned about asking Mr. Grand questions, giving him opportunities to lie to me, than to convey to him that – that, if he's opening a

shul or synagogue, that he cannot do that without a special-use permit." R. 83-1, Brennan Dep., PageID#: 1970.

This is precisely the kind of credibility determination that cannot support summary judgment or defeat ripeness. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Adams v. Metiva*, 31 F.3d 375, 384 (6th Cir. 1994) ("the district court is not to make credibility determinations or weigh the evidence"); *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011) ("It is the jury, not the judge, who must decide which witnesses are credible"). Brennan insisted that Grand seek an SUP only because he did not believe Grand, not from a principled, neutral application of UHCO 1274. This unbridled discretion calls out for judicial review and correction.

> D.   The Ripeness Doctrine Does Not Apply When a Party is Subject to Ongoing and Categorical Ban on the Exercise of First Amendment Rights.

If there were any ambiguity in the CADO, this uncertainty was eliminated by the March 23 Edict, which reiterated and reinforced the City's position: no religious gatherings of any kind merely "consistent with" activities in a house of worship could occur at Grand's home without a SUP, without any indication that a small gathering of ten men would be tolerated. Jews being called to pray in a minyan of ten men is one of the central activities

11

conducted at a synagogue and would come squarely within the Edict and threat of immediate criminal enforcement of the City's laws. [3]

By the time of the March 23 Edict, Grand had not only argued his specific case in front of the entire community, but he had also written directly to Brennan on March 22 reaffirming his narrow aims. *See* Brennan Tr. PageID# 1579, 1588-89; R. 20, Grand Letter of Clarity, PageID# 1530-31. Yet Brennan stated unequivocally that any "congregating" to "conduct activities consistent" with those of a house of assembly would be subject to prosecution with a special use permit. *See supra* at 17. Brennan reiterated, "I will remind the applicant that the cease-and-desist order of the City [barring the use of any residential facility as a "shul"], dated January 21, 2021 remains in effect." R. 83-1, Brennan Dep., PageID#: 2053.

Now, the overbreadth problems in the CADO letter were extended not only to the operation of a "shul," indeterminate as that was, but to *any* activities consistent with those conducted in a place of religious assembly, sweeping in a range of clearly protected activity. *See* Appellant's Brief at 33-34. Even more chillingly, Brennan expressly referenced potentially illegal activities at 2343 Miramar (which was well known as the Grand home),

---

[3] *See, e.g.*, *The Importance of Praying with a Minyan*, https://www.chabad.org/1176648.

virtually calling on residents to spy on each other and report suspicious activity to the authorities:

> *If you observe such activities*, and I hope you do not, but if you do, ***you may report them*** *to the city and* ***the city will enforce its laws****, which exist for the benefit of the entire community. And* ***we will seek all appropriate remedies in court****.*

Brennan Dep., 247: 1-24, ECF No. 83 [Page ID#: 1342-43] (emphasis added).

The disturbing overtones of this edict are unmistakable. *See infra* at 35-36. This was not a ministerial or advisory clarification. It was an unequivocal prohibition from the City's chief executive, directed at Grand, declaring that any religious activity in a private home, no matter how modest, if merely "consistent" with activities conducted in a house of worship, was unlawful and would be subject to prosecution. Courts have long held that determinations which have the status of law and carry immediate consequences are reviewable. *See Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 90 (1st Cir. 2013); *Near v. Minnesota*, 283 U.S. 697, 713–14 (1931).

Appellees allege that the pronouncement "simply states that the City will enforce its ordinances to the benefit of the entire community." Appellee's Br. At 23. This argument rings hollow when confronted with the full text of

Brennan's March 23 Edict, which goes far beyond anything in the City's ordinances. *See infra* at 35-36.

The threat of enforcement, including criminal sanction and civil penalty, continues to hang over Grand to this day. A violation of the University City Zoning Codes is a "misdemeanor of the first degree," warranting fines up to $1,000 or imprisonment of 6 months, with a "separate offense for each and every day during any portion of which any violation of this Zoning Code is committed." University Heights Codified Ordinance Chapter 1242.99(a). In short, the March 23 Edict was a formal reaffirmation of an unconstitutional prohibition. Its timing, audience, and substance confirm that the City continued to demand that Grand suppress religious activity in his home or face legal consequences. That is a final, ripe, reviewable government action under federal law.

Appellees' suggestion that Grand "should have known" he was free to hold religious gatherings without a SUP is refuted by the most direct and unfiltered pieces of evidence in the record: Brennan's own words. On his initial phone call with Brennan, immediately following the email invitation Grand had sent to a handful of friends and neighbors, Brennan made clear that no religious assembly could take place in Grand's home without an SUP. R. 83-1, Brennan Dep., PageID#: 1888-89.

Appellees now suggest that Grand misunderstood or overreacted. But their briefing never addresses the call directly. It ignored the fact that the City's enforcement process began and concluded with an executive directive, issued without nuance, and backed by the full weight of municipal power. Brennan's commands–both privately issued and publicly affirmed–must be subject to review to ensure the protection of religious liberty.

E.    Appellees Authorities Are Easily Distinguishable.

Appellees reliance on *Miles Christi Religious Ord. v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010), *Grace Cmty. Church v. Lenox Twp.*,  544 F.3d 609, 615 (6th Cir. 2008) and *Insomnia, Inc. v. City of Memphis, Tenn*., 278 Fed. Appx. 609, 2008 WL 2121053 (6th Cir. May 20, 2008) is unpersuasive in this context. In *Miles Christi*, the Court stated that despite the voluminous record in the case, "we have no idea" whether the towhiship had "gone too far." *See Miles Christi*, 629 F. 3d at 539. Here, despite the City's insicere arguments to the contrary, the City shut down Grand's activities preemptively knowing that he intended to only host small private gatherings in his home on the Jewish Sabbath and holidays. Moreover, the *Miles Christi* plaintiffs filed suit after they had operated their church for years in the face of specific complaints about parking and traffic caused by their activities, and the existence of an extensive record to this effect. *Miles*

*Christi* at 536-540. In contrast, in the present case, the City's actions were preemptive and speculative, raising obvious prior restraint issues not present in *Miles Christi*.

Similarly, in *Grace Cmty. Church*, the Plaintiffs had already applied for and received a SUP and sought to bypass ordinary channels of review when the SUP was revoked following credible allegations that they had violated its terms. *Grace Cmty. Church*, 544 F.3d at 611-612. As with *Miles Christi*, no prior restraint, vagueness, overbreadth or credibility concerns were at issue and, as the Court observed, that plaintiffs continued their religious activities for more than a year without no city action. *Grace Cmty. Church*, 544 F. 3d at 612.

Finally, in *Insomnia*, applicants for a subdivision to permit the use of their property for adult entertainment sought to bypass the normal zoning process with a judicial challenge after the City requested that they resubmit their application for a subdivision to seek approval for a planned development instead. *Insomnia*, 278 Fed. Appx. 609 at *1. There was no suggestion of an impermissible prior restraint, of any procedural irregularities in the zoning process, the exercise of unbridled discretion, any facial infirmity of the statute at issue, or any sweeping pronouncement of a government official banning clearly protected as well as unprotected conduct. The *Insomnia* plaintiffs were

16

merely attempting to bypass normal zoning procedures neutrally applied, rather than challenging an unlawful exercise of municipal authority that was over-reaching, flawed and chilling, as here.

## II.    The Quasi-Judicial Hearing Denied Grand Due Process

Appellees assert that Grand had the opportunity to pursue a SUP through the City's administrative process. But the process he encountered was neither neutral nor fair. Rather, it was an unprecedented, adversarial proceeding that denied him notice, a meaningful opportunity to be heard, and a fundamentally fair forum. It was not a hearing designed to assess the merits of Grand's application; it was a procedural vehicle designed to defeat it.

A.    Grand Did Not Receive Prior Notice of the Unprecedented Quasi-Judicial Nature of the SUP Hearing or a Fair Opportunity to be Heard.

Procedural due process requires notice and an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Grand received neither meaningful prior notice nor a fair opportunity to be heard.

1.    The Absence of Prior Notice.

Prior notice is the cornerstone of a meaningful opportunity to be heard and its logical predicate. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to

apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'").

Here, with little explanation, unclear standards, and shifting expectations, Grand was not even notified that the upcoming hearing was going to be held in an unprecedented quasi-judicial format. R. 83-1, Brennan Dep., PageID#: 2012. This is undisputed.

The PC imposed unusual procedures on Grand's SUP application that had not been used with other applicants seeking zoning relief. The City acknowledges they never held such a proceeding for a homeowner's permit request, and Brennan admitted that he could not recall with certainty any instance where a similar format had been used, suggesting discriminatory treatment. R. 83-1, Brennan Dep., PageID#: 2011. Grand had no idea how evidence would be presented, when the record would be closed, and his burdens of proof and persuasion. Appellant's Opening Br., 13-15, 30-33. Appellees do not attempt to argue that Grand was given fair notice, essentially conceding his due process claim and basing their argument almost entirely the alleged implication of Grand's withdrawal of his application. This approach fails, as a constitutional due process injury is immediately appealable upon deprivation of the right. *See Patsy v. Board of Regents*, 457 U.S. 496 (1982) ("exhaustion of administrative remedies should isn't a prerequisite to bringing

an action pursuant to §1983"; *Williams v. Reed*, 604 U.S. ___ (2025) (same);
*Knick v. Township of Scott*, 588 U.S. 180, 185 (2019) (claim accrues upon
taking of property); *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*,
949 F.2d 890, 894 (6th Cir. 1991) (procedural due process claim "instantly
cognizable in federal court without requiring a final decision on a proposed
development from the responsible municipal agency"); *Bigelow v. Michigan
Dep't of Nat. Res.*, 970 F.2d 154, 160 (6th Cir. 1992) (highlighting the
"sensible proposition that while different circumstances may produce
different results, the final decision rule does not apply when the denial of
procedural due process itself creates an injury"). *See also Harris v. County of
Riverside*, 904 F.2d 497, 501 (9th Cir. 1990); *Evans v. Chater,* 110 F.3d 1480,
1483 (9th Cir.1997) (citing *Gonzalez v. Sullivan,* 914 F.2d 1197, 1202 (9th
Cir.1990).

### 2.  Denial of a Fair Opportunity to Be Heard.

Grand's efforts to supplement the record were openly obstructed. Prior
to the second hearing, members of the PC requested additional information
from Grand. But Brennan, who personally shaped the hearing process,
intervened to bar Grand from submitting further material. There is no
indication in the record that any such limit had been imposed on any prior
applicants.

This conduct stands in sharp contrast to the Sixth Circuit's expectations of fairness in administrative proceedings. In *Nasierowski*, 890 F.2d at 896, the Court held that due process is violated where a local process is "of a general nature" but "a governmental unit singles out and specifically targets an individual's property." That is precisely what occurred here.

In their reply brief, Appellee cites *Nasierowski* for the holding that the procedural due process violation only existed when the City Council deviated from the recommendations of the planning commission. (Appellee's Br. At 21.) But *Nasierowski* was not limited to a narrow point of Michigan law. Rather, it held that *whenever* there is a procedural due process violation, regardless of local specifics, plaintiffs do not have to wait for *Williamson* finality and can appeal the violation immediately because the injury is felt immediately. *Nasierowski*, 890 F. 2d at 894.

The hearing process failed every element of procedural regularity. Grand had no opportunity to address the PC in a manner like other similarly situated applicants, answer questions, challenge evidence, or clarify the intent of his application. When members of the PC requested additional materials to supplement his application, the highest-ranking City official, Brennan, expressly denied the opportunity to present such supplemental material.

Brennan Dep. 163:12-19. Appellees do not deny that Grand's proceeding was not conducted on equal terms with other applicants.

Appellees' "exhaustion" argument is cobbled together from inapplicable precedent and attempts to do something to paper over their near total reliance *on the consequence* of the due process violation–Grand's withdrawal of his application–while glossing over the Constitutional injury itself. This approach is fatally flawed. As this Court has expressly held, "the allegedly infirm process is an injury in itself," *Nasierowski* 949 F.2d at 894. *Willamson* finality is *not* required where "the deprivation of procedural due process was immediately sustained and concretely felt" by Grand "*notwithstanding the absence of a 'final' decision*" from the City. *Id.*; s*ee supra* at 22-23 (emphasis added). Withdrawal was the direct consequence of Grand's injury, not a waiver of his rights.

The record here shows that the process was a hollow shell—devised uniquely for Grand and used to frustrate his religious exercise. There could not be a clearer violation of due process in both form and substance.

## III.    The DOJ's Amicus Brief Deserves Substantial Weight

Appellees attempt to downplay the Department of Justice's amicus brief by framing it as improper under the party-presentation principle. Relying on cases like *In re Isaacs*, 895 F.3d 904 (6th Cir. 2018), they argue the DOJ

strays beyond the claims presented and thus should be ignored. But this framing misstates both the content of the DOJ's submission and the applicable legal standard.

The DOJ's brief properly addresses a question that is not only "fairly included" within the issues presented, but that is squarely before the Court: whether Appellant's RLUIPA claim is ripe for review. The DOJ argues that finality under RLUIPA does not require further administrative exhaustion when the government's action burdens religious exercise.

Even under the more restrictive reading of amicus scope proposed by Appellees, the DOJ's brief remains proper. It does not invent new claims. Rather, it elucidates the scope of existing ones—particularly the ripeness framework applicable under RLUIPA and related First Amendment doctrines. This is well within the boundaries articulated by the Sixth Circuit and the Supreme Court. *See Cellnet Commc'ns, Inc. v. F.C.C.*, 149 F.3d 429, 443(6th Cir. 1998) ("an amicus may offer assistance in resolving issues properly before a court"); *Teague v. Lane*, 489 U.S. 288, 300 (1989) (considered argument raised only in an amicus brief). The Appellees' reliance on *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020), is misplaced. The DOJ has not introduced a new legal theory but rather provided interpretive support for

a statutory claim already at issue—namely, RLUIPA's scope and application to religious uses of property. *See In re Isaacs*, 895 F.3d 904 (6th Cir. 2018).

Moreover, Appellees' own briefing all but concedes the substance of the DOJ's analysis. Their response fails to engage with the DOJ's central claim: that finality for RLUIPA purposes does not require completion of a permitting process if the burden on religious exercise is already complete. Instead of rebutting that reasoning, they attack the DOJ's participation.

Such an approach ignores the well-established deference courts grant to the federal government's interpretation of federal statutes—particularly civil rights statutes like RLUIPA. The DOJ is tasked with enforcement of RLUIPA and its views carry weight. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (agency interpretations may be persuasive "depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency…"). The DOJ's amicus brief here reflects all those qualities: it is well-reasoned, consistent with precedent, and directly responsive to the facts at hand. It should be adopted.

## IV.    The District Court's Sua Sponte Dismissal Was Improper

Mirroring the underlying due process violation here, the district court dismissed Grand's claims *sua sponte* in its September 29, 2023 order, deciding the threshold issue of ripeness without a properly developed record

or adversarial briefing, providing Plaintiff no prior notice or an opportunity to be heard. This approach contravenes Sixth Circuit law and undermines due process and procedural fairness. *See Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983). Where material facts are in dispute, such dismissal is particularly inappropriate. *See Catz v. Chalker*, 142 F.3d 279, 285 (6th Cir. 1998).

The District Court compounded its error by dismissing Grand's claims *with prejudice*. Even assuming arguendo that the claims were unripe (they were not), dismissal should have been without prejudice, as ripeness is a jurisdictional bar—not a ruling on the merits. *Bachman v. Bagley*, 487 F.3d 979, 982 (6th Cir. 2007) (explaining that dismissals based on justiciability doctrines like ripeness must be without prejudice). By its ruling, the District Court placed Grand in an impossible position. On the one hand, according to the Court, his claims were not ripe because he had not completed the SUP review process; on the other hand his claims were dismissed with prejudice, so if municipal authorities put further pressure to prevent him from holding prayer services in his home, he would be without remedy. Such a situation is untenable. The Court's decision must be reversed.

**V.    Summary Judgment Was Improper on the FACE Act Claim**

This case remains live and justiciable. The City has never rescinded the CADO, nor disclaimed its authority to enforce UHCO 1274 against future Sabbath gatherings. Grand continues to refrain from religious observance in his home due to the threat of enforcement, which constitutes ongoing constitutional injury. *See Steffel v. Thompson,* 415 U.S. 452, 459 (1974) (threat of criminal enforcement of statement renders claim justiciable even absent express government action). Accordingly, this Court can and should consider the merits of Grand's FACE claims.

The District Court, applying *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47 (2nd Cir. 2021) as persuasive precedent, should have denied summary judgment on Grand's FACE Act claim. While Grand's home is not primarily used for prayer, his prayer room *is* primarily used for prayer. *Jingrong* expressly allows for a single room to be designated a "place of worship. *Id.* at 47.

Appellees argue that Grand has failed to satisfy the FACE Act's "force or threat of force" requirement. *See* Appellee's Br. 35-36. Appellees correctly observe that the Act only imposes liability on those who

> by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempt to injure intimidate or interfere…

18 U.S.C. § 248(a)(2).

Appellees ignore Brennan's March 23 Edict in which he, invested by the full force and authority of his office, expressly prohibited the very action he knew Grand contemplated, encouraged citizens to monitor the Grand residence at 2343 Miramar Boulevard, and urged residents to report any violations of the UHCO 1274 or the CADO for punitive enforcement action:

> Let there be no confusion, congregating at 2343 Miramar Boulevard or any other address located in a residence zoned U-1 without a special-use permit is a violation of city law.
>
> I'm hopeful that the wording of the withdrawal is not intended to suggest that *congregating weekly at a residence to conduct activities consistent with those* in a house of assembly does not *require a special-use permit*.
>
> As recently as two months ago, the City brought suit against the organizers of another residential shul, one on Churchill Boulevard and ultimately obtained a permanent injunction in court.
>
> To the Community members who are here, *let there be no question, **there is no permission granted here to** operate – there is no permission granted here to operate a house of assembly **or conduct activities consistent with one at 2343 Miramar Boulevard***.
>
> *If you observe such activities*, and I hope you do not, but if you do, ***you may report them** to the city and **the city will enforce its laws**, which exist for the benefit of the entire community. And **we will seek all appropriate remedies in court***.

R. 83-1, Brennan Dep., PageID#: 2054.

Any reasonable person of ordinary intelligence understood that "the full force of the law," which could include prosecution for a criminal misdemeanor, was being brought to bear specifically on Grand at his private

home on Miramar Boulevard to prevent any "congregating… consistent" with conduct in a house of worship, thus seeking to "intimidate or interfere with" Grand's "exercising" his "First Amendment right of religious freedom." *See* 18 U.S.C. § 248(a)(2); *see supr*a at 35. And the City is encouraging its residents to report activity consistent with such "congregating" or entering the Grand residence so that the full force of the law can be brought down on the offending Jews who will be penalized with "all appropriate remedies in court." The Court does not have to think hard to see the dangerous overreach in the Mayor's threatening edict.

The FACE Act exists to serve as a bulwark against a slide into a potentially dangerous oppression of individual liberty–whether in the name of "community values" or something more nefarious.  The Court should leave no doubt that the true values of a liberal society are diametrically opposed to those Brennan attempted to enforce in violation of statutory and Constitutional law.

## VI.     The Court Should Retain Jurisdiction Over the State Law Claim

The district court's refusal to retain supplemental jurisdiction over Grand's claim under the Ohio Public Records Act, Ohio Rev. Code § 149.43, was an abuse of discretion under 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all

27

other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Claims form part of the same case or controversy when they "derive from a common nucleus of operative facts." *Blakely v. United States*, 276 F.3d 853, 861 (6th Cir. 2002).

In the present case, Grand's state law claim is inextricably intertwined with his federal action because his state law public records claim could reveal additional evidence of bias directly supporting his federal constitutional claims. The existence of probative records of bias affecting the denial of his constitutional rights thus form part of the same nucleus of operative fact as Grand's substantive claims. In reviewing Grand's claims of constitutional violations based on animus, the Court should be left with the "firm conviction" that that it was an abuse of discretion to deny Grand access to the very evidence available under state law that could establish the violations alleged under federal law. The "values of judicial economy, convenience, fairness" all militate in favor of permitting access to evidence available in one forum to carry a burden of proof established in another. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). The exercise of supplemental jurisdiction is clearly appropriate here.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should reverse the decision of the District Court and remand for further proceedings consistent with its decision. Reversal safeguards religious liberty from arbitrary overreach, ensuring due process for all.

New York, NY
July 21, 2025

*/s/ Eden P. Quainton*
Quainton Law, PLLC
2 Park Ave., 20th Fl.
New York, NY 10016
Tel: 212-419-0575
http://quaintonlaw.net
*Attorney for Plaintiff-Appellant Daniel Grand*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B) and 32(g)(1), I certify that this brief complies with the type-volume limitations and formatting requirements.

This brief was prepared using Microsoft Word in 14-point Times New Roman font, a proportionally spaced typeface. According to the word count function of Microsoft Word, this brief contains 6,278 words, excluding the parts of the brief exempted by Rule 32(f).

I further certify that this electronic brief is identical to the paper copies filed and has been scanned for viruses using industry-standard antivirus software and is virus-free.

/s/ Eden Quainton

Counsel for Plaintiff–Appellant

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, a copy of the foregoing Reply Brief for Plaintiff–Appellant was electronically filed with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit using the Court's electronic filing system, which automatically provides electronic service to all counsel of record registered with the Court's CM/ECF system.

Additionally, I certify that copies of this brief have been sent via electronic mail to counsel for Defendants–Appellees at their registered email addresses with the Court.

This certification is made under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the above information is true and correct.

/s/ Eden Quainton

Counsel for Plaintiff–Appellant